CLOVER LEAF FREIGHT LINES, Inc., v. PACIFIC COAST WHOLESALERS ASS'N.

No. 9310.

Circuit Court of Appeals, Seventh Circuit.

Jan. 14, 1948.

Rehearing Denied April 19, 1948.

Paul J. Maguire, of Chicago, Ill., for appellants.

Samuel M. Kane, Meyer J. Myer, and Edward E. Kane, all of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

The validity and effectiveness of the service of process on an individual in Chicago, in a suit against a California corporation, determine the correctness of the District Court's order vacating a default judgment against defendant, and quashing the service on it.

The defendant, the Pacific Coast Association, is a nonprofit corporation, organized in California. Plaintiffs assert its transaction of business in Chicago by having had freight consigned to it in care of the Transport Terminal Company, Chicago. The Transport Company, pursuant to a contract which it had with the defendant, assembled such freight into carload lots and handled its shipment to defendant or its members on the west coast. The individual upon whom the summons and complaint were served was one Al Davis, president of the Transport Terminal Company.

The plaintiffs are four shippers who carried freight consigned to defendant, to Chicago. They had regular tariffs filed with the I.C.C. setting forth their freight charges. However, Transport Company revised and reduced the bills which the plaintiffs submitted, and made what plaintiffs claim were under payments. It is because of these alleged under payments that plaintiffs brought this suit.[1] Transport Company was reimbursed by defendant for sums which it advanced, as well as for its stipulated service charge for assembling and forwarding the freight.

The U. S. Marshal's return on service read as follows:

"Served this writ together with copy of Complaint on the within named Pacific Coast Wholesalers Association, a corporation, by delivering copies thereof to Al Davis, *an agent of said corporation,* this 3rd day of June, A. D., 1946. The President of said corporation not found in my district. * * *" (Italics ours.)

Motion supported by affidavit, for default judgment was made, and the court entered a default judgment for the amounts claimed, and interest and costs, on July 1, 1946. Executions were issued and returned unsatisfied.

On August 6, the defendant, Pacific Coast Wholesalers Assn., appeared by counsel and moved to vacate the default judgment, the motion reciting:

"appearing specially * * * moves that all of the judgments * * * by default * * * be vacated and that this suit be dimissed on the ground that the suit has been brought in the wrong district of the United States because as appears from the Complaint, this suit arises under a law regulating commerce, to-wit: U.S.C.A., Title 49, Section 317, Paragraph (b), and the defendant is not an inhabitant of the Northern District of Illinois, wherein this suit is brought, within the meaning of Section 51 of the Judicial Code [28 U.S.C.A. § 112] * * *."

In its amended motion to dismiss, defendant gave as further ground:

"this Court lacks jurisdiction over the person of this defendant and that the service of process is insufficient and the return

---

[1] The complaint is in four counts, one each respectively for the four plaintiff shippers. Their allegations in brief are:

| Plaintiff | Period of Shipments | Amount of Underpayment | State of Incorporation |
|---|---|---|---|
| Clover Leaf Freight Lines | Sept. 15, 1942-Feb. 2, 1944 | $1,399.73 | Michigan |
| Interstate Dispatch Company | Sept. 15, 1942-Oct. 16, 1944 | 1,580.52 | Illinois |
| Middle States Motor Freight | Jan. 15, 1943-Dec. 13, 1945 | 3,252.01 | Ohio (Partnership) |
| Rockford Motor Service, Inc. | Oct. 3, 1942-Dec. 9, 1944 | 707.53 | Illinois |

thereof should be quashed, for the reasons that:

"(1) The said Al Davis, upon whom the summons and complaint were served, was not an officer, agent or employee of the defendant, nor was he authorized to receive service of process for it, and

"(2) The defendant is a corporation organized under the laws of and residing in the State of California; that it was not doing business in the State of Illinois, nor was it licensed to do business there; that it did not consent to be sued or served with process in the State of Illinois; and that it was not present in the State of Illinois so that process could not there be served upon it."

This motion to vacate was supported by an affidavit of the secretary of defendant, and by another affidavit by an employee of the Transport Terminal Company. The secretary's affidavit was to negative any inference of defendant's "doing business" in Illinois so as to be subject to suit in said state.

The affidavit of defendant's secretary is set forth below.[2]

The affidavit of Transport Company's employee gave the details of its methods of handling of defendant's freight.[3]

The amended motion was supported by the affidavit of the executive secretary of the defendant, which affidavit stated that Al Davis "is neither an employee nor an agent" of defendant and was not "authorized to accept service".

Al Davis also made an affidavit setting forth the facts of his presidency of Transport Terminal Company and also stating that the Transport Company is not a subsidiary of or affiliated with the defendant and none of its stock is owned by defendant, and there was no organizational connection between the two companies. Transport Company was engaged in the business of consolidating, distributing and forwarding freight for various shippers and associations of shippers. Transport Company has had a contract with defendant for four years, dealing with the handling of defend-

[2] "Affiant * * * states that Pacific Coast Wholesalers Association is a nonprofit corporation organized and existing under * * * laws of * * * California; that its principal office is * * * in · * * * California; * * * it is not incorporated under the laws of the State of Illinois; that it has not applied for or received any license to do business in * * * Illinois; that it has no agent, registered or otherwise, for the purpose of accepting service of process in the State of Illinois; and that it has not consented to be sued in the State of Illinois or in the Northern District thereof.

" * * * Transport * * * Co. * * * an Ill. Corp. with its principal offices, freight receiving station and place of business at 900 South Wells Street, Chicago * * *; that its president is * * * Al Davis and its vice president is *one Gus A. Olson, who is also general manager of Pacific* * * *. Pacific * * * is comprised of a number of industrial firms located at various points on the Pacific coast.

"During the time of affiant's employment the first comprising the aforesaid membership directed that less carload shipments moving from their sources of supply located at points in the midwestern and eastern parts of the United

States should be consigned to Pacific Coast Wholesalers Association at Chicago * * *. Such shipments moved daily under uniform standard bills of lading via the services of rail, freight forwarder and motor carriers to the aforesaid receiving station of Transport * * * Co., and receipts were issued thereon reading, 'Transport Terminal Co., *Agent* for Pacific Coast Wholesalers Association.' "

[3] " * * * Transport * * * Co. investigated, checked and revised all bills for freight * * * covering the transportation of the said less carload shipments from * * * points of origin to its receiving facilities at Chicago * * *. Said charges were paid by Transport * * * Co., * * * (and) reimbursed by Pacific * * *. Transport * * * Co. also determined the charges which were to be paid by the individual members of the assn. for the services performed in the handling * * * of their individual shipments.

"*Affiant further represents that the name of Pacific Assn. is carried in the Chicago telephone directories and a sign bearing the legent* (sic.) *'Pacific Coast Wholesalers Association' appears directly over the receiving facilities of Transport Terminal Co.*" (Italics ours.)

ant's freight. The substance of the contract, as stated in Davis' affidavit, is set forth in the margin.[4]

The trial court did not specifically state the reasons for its ruling in setting aside the default judgment and quashing service, but it is easy to see the contest is over the query—Was defendant doing business in Illinois so as to be subject to suit?

The plaintiffs contend:

(1) defendant waived any defect of venue by failing to challenge it before entry of default judgment;

(2) defendant's activities in Illinois estopped its asserting improper venue;

(3) defendant's activities in Illinois, through Transport Terminal Co. were sufficient to constitute its presence here for service of process;

(4) personal service upon Davis, president of Transport Co., was binding upon defendant.

Defendant, on the other hand, denies that (1) its activities in Illinois constituted consent by it to be sued here, nor was it doing business here so as to be subject to service; (2) service upon Davis could not bind it because he was neither its agent, officer nor employee.

Our guide is the opinion of the late Chief Justice Stone, rendered in the case of International Shoe Co. v. Washington, 326 U. S. 310, 316, 319, 320, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057. In the light of the opinion in that case, we have little doubt that the defendant was "doing business" in the State of Illinois in this case so as to be subject to suit here.

The facts necessitating such a conclusion are:

(1) Transport Terminal Co. was an agent of defendant.

(2) Defendant's business was the handling of freight, a very vital part of that business, i. e., the handling of freight, routed to Chicago for reassembly into carload lots, for final shipment to defendant or its members.

(3) Such activity in Illinois was substantial—it had continued for four years and its volume of business was substantial (the fact that the alleged under payments alone amounted to just under seven thousand dollars is evidence of the volume of its business).

(1) Defendant stresses the independence of Terminal Transport Company of the defendant. True, there is evidence that they are separate corporations. Equally clear is the proof to show Terminal Co. was a valued agent of defendant. "Nearly one-half of the freight tonnage handled by Transport Co. consists of freight consigned to Pacific Coast Association". The only inference we can draw from the sworn state-

---

[4] "Transport * * * agreed to receive at its terminal, freight * * * consigned to Pacific Assn. or its members, to consolidate such shipments into carloads and to forward the same to Pacific Assn. at Los Angeles * * * and other points * * *; that Transport * * * advances to incoming carriers the freight charges * * * and bills said charges to Pacific * * *; that Transport * * * makes a charge to Pacific Assn. of a certain number of cents * * * (per) hundred pounds of freight * * * (handled).

"* * * Transport * * * does, and for * * * four * * * years * * *, has been rendering * * * the same service * * * to five other associations * * * on the West Coast * * * as well as to * * * individual shippers; that Transport * * * solicits this same * * * business from the * * * public; that less than *one half of the freight tonnage handled by* Transport Terminal Company consists of freight consigned to Pacific Coast Wholesalers Association.

"* * * the only moneys Transport Co. receives from Pacific Assn. are its * * * charges based on the quantity of freight handled, * * * and repayment of * * * sums * * * advanced for freight charges * * *; that Transport pays all its own (operating) expenses * * *. Transport is not controlled, * * * or operated, directly or indirectly, by Pacific Assn. but that it is an independent business venture * * *, and that its entire relationship with Pacific Assn. is limited to the contract.

"Affiant * * * says * * * he was not an officer, managing agent or other agent or employee of Pacific Assn. and that neither he nor Transport Terminal Company was authorized to receive service of process for Pacific Coast Wholesalers Association."

ment of the Terminal's president is that well-nigh one-half of Terminal's business was for defendant. It was paid by defendant for such service, and its compensation was a percentage of defendant's business.

While there seems to have been no corporate relationship between the two, the vice-president of Transport Co. was general manager of defendant, a fact not to be ignored for it suggests possibility of control which defendant might have had in determining Transport's policy and operation.

Defendant's and Transport Co.'s own appellation of the relationship was that of *agency,* in several instances when they were not conscious of or troubled with the instant controversy.

The affidavit of Transport Co.'s employee, submitted by defendant as basis for the motion to vacate stated

"Such shipments moved daily under uniform standard bills of lading  *  *  *  to the aforesaid receiving station of Transport Terminal Co., and receipts were issued thereon reading, 'Transport Terminal Co., Agent for Pacific Coast Wholesalers Association.' "

(2) Defendant's business was described by the Interstate Commission as follows:

" *  *  *  (defendant) is an association of shippers engaged in consolidating and distributing freight for its members on a non-profit basis, for the purpose of securing the benefit of carload, truckload, or other volume rates  *  *  *."

It can thus be seen how extremely important a part of defendant's business was being done in Chicago by the Transport Co. It was an important cog in effectively accomplishing the economic and efficient transportation of products going to defendant and its constituent members in California from points beyond Chicago. If such freight had been shipped directly to defendant in California in the less than carload lots, the freight cost would have been much greater. Transport Co.'s activity eliminated any necessity for a formal "branch" of defendant being in Chicago.

(3) Not only was the volume of defendant's business carried on by Transport Co. very substantial and long continued, but there were the more formal indicia of presence of defendant in Illinois, manifested (1) by a sign bearing the legend "Pacific Coast Wholesalers Association" appearing directly over the receiving facilities of Transport Terminal Company; (2) defendant's name was also carried in the Chicago telephone directories.

In the International Shoe Co. case, supra, it was said the criteria for determining whether a corporation's activities were such as to justify its subjection to suit could not be "simply mechanical or quantitative." The corporation must have "certain minimum contacts (within the state)  *  *  * that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " The Court said

"Those demands (of due process) may be met by such contacts of the corporation with the state of the forum as make it *reasonable,* in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection.  *  *  *

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been *continuous* and *systematic,* but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given.

*        *        *        *        *        *

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

As we read the International Shoe opinion, containing as it does such a fair and practical application of the theory of the

law to modern business conditions as they exist, we can not avoid the conclusion that it is eminently fair in the instant case to hold the Pacific Coast Association liable to suit in Illinois, and make it responsible to plaintiffs if there be merit proved in their contention of illegal underpayments on freight of defendant by them carried to Chicago, and deposited with Transport Co. The transaction in controversy arose in Chicago. It was Transport Co.'s alleged illegal action in Chicago in reducing the freight charges for freight services terminating in Chicago, that gives rise to the instant cause of action.

If, in so reducing the freight charges, the Transport Co. was acting for defendant as its agent, and as suggested in the International Shoe Co. case, we are to "estimate inconveniences" in defending a suit away from home, we believe we might also well place on the scale the inconvenience of the four plaintiffs located in Michigan, Ohio, and Illinois, going to California to sue the defendant. In fact, it might be even more convenient for Pacific Coast to be sued here than in California, for all the books and records concerning the charges in issue are presumably located at Transport Co.'s place of business. Those records must be of hundreds of transactions; the persons who took it upon themselves to calculate the existence of overcharges must be located at Terminal Co.'s offices in Chicago. All of these facts lead us to the inescapable conclusion that the logical forum for the determination of the conflict is in Chicago.

In view of the fact of our holding that Transport Co. was an agent of defendant and its activities such as to render defendant liable to suit in Illinois, it follows that service of process upon Transport Co.'s president was valid service upon defendant.

Ordinarily, service on a foreign corporation doing business in another state may be made by service on its agent in said state. Here the agent of the foreign corporation is a domestic corporation. The avoidance of the service by the foreign corporation may not be accomplished because the agent is a local corporation rather than an individual. If the service on the local corporation,—the agent—is good as to said local corporation, it follows that it is good as to the principal, the foreign corporation. Here the service on the president of Transport Co. was service on said domestic corporation. It was therefore good as service on the foreign corporation.

*Venue* Another issue strenuously urged is that the trial court lacked venue. The statute provides that a defendant shall be sued in the district of which he is an inhabitant. Defendant is an inhabitant of California. Even though we have concluded defendant was doing business in Illinois, it would seem that it is not subject to suit if it has not designated an agent for service in this state or unless it has waived a lack of venue. Plaintiffs staunchly contend that such waiver was effected when it permitted default judgment to be entered against it, and for this contention they rely on Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 99, 73 L.Ed. 252. In that case, Justice VanDevanter stated:

"* * * the other provision * * * merely accords to the defendant a personal privilege respecting the venue * * * which he may assert, or may waive, at his election.

"The decisions also make it plain that the privilege must be 'seasonably' asserted; else it is waived. * * *

"We are of opinion that the privilege is of such a nature that it must be asserted at latest before the expiration of the period allotted for entering a general appearance and challenging the merits. In ordinary course, when that period expires the defendant either will have appeared generally for the purpose of contesting the merits or by suffering a default will have assented that his adversary's allegations be taken as confessed for the purposes of judgment. * * * To hold that such a privilege may be retained until after the suit has reached the stage for dealing with the merits and then be asserted would be in our opinion subversive of orderly procedure and make for harmful delay and confusion. * * *

"Here the objection was not that the court was without jurisdiction of the subject-matter of the suit, but that the suit was not brought in the district of the residence

632

of either party—a waivable matter of venue only.

"Our conclusion is that the objection was not seasonably made and therefore that under our decisions * * * it was waived."

Defendant, however, contends that this decision antedated the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and therefore has lost its controlling importance. Blank v. Bitker, 7 Cir., 135 F.2d 962. The Commercial Casualty Insurance Co., case however, has been cited as recently as 323 U.S. 310, 314, 65 S.Ct. 289, 292, 89 L.Ed. 260 (Industrial Addition Ass'n v. Commissioner) wherein Chief Justice Stone, speaking for the court, stated: "The right to have a cause heard in the court of the proper venue may be lost unless seasonably asserted."

In Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 1149, 87 L.Ed. 1509, the following appears:

"That requirement relates to venue. But venue involves no more and no less than a personal privilege which 'may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.' * * *

"On the face of the present record it would seem that any objection to venue has been waived. There is no indication in the record before us that any such objection was 'seasonably asserted.'"

The Bitker case in this court is distinguishable. This court there found there was no waiver. Deposition had been taken simply to refresh the party's recollection and the answer pursuant to the Rules incorporated not only the answer on the merits but the defense of improper venue. This practice Rule 12(b) authorizes.

Getting down to the realities in this case and the reasons back of the Commercial Casualty Insurance Co. case, we believe that the default in the instant case was sufficient to bar defendant's later assertion of lack of venue.

First of all defendant was well aware of the imminence of suit. There had been letters sent by plaintiffs' counsel to defendant and its counsel in California pleading for adjustment of the underpayments, and threatening suit if such payments were not made. Defendant's counsel wrote concilia-tory letters begging for more time to ascertain the merits. Plaintiffs stated the I. C. C. was pressing them to rectify their undercharges under their tariffs. So, this suit was not a matter of surprise to defendant. The complaint was filed May 14. Summons was served upon Mr. Davis, June 3. Defendant received a copy of it on June 10. The default judgment was entered July 1. Motion to vacate was made August 6. Defendant was apprised by the summons that unless answer were filed within 20 days default judgment would be taken against it. Defendant sat by while more than the 20 days elapsed without taking action, and tardily appeared in August, two months after Mr. Davis had been served, and asked that the service be quashed on the ground of lack of venue.

We conclude that this case is controlled by the Commercial Insurance case.

The judgment is

Reversed.