**BACH et al. v. FRIDEN CALCULATING MACH. CO., Inc.**

No. 10556.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1948.

Nelson Schwab, Jr., of Cincinnati, Ohio (Joseph S. Graydon, Joseph H. Head, Hugh McD. Ritchey and Nelson Schwab, Jr., all of Cincinnati, Ohio, on the brief; Graydon, Head & Ritchey, of Cincinnati, Ohio, of counsel), for appellants.

Carl M. Jacobs, of Cincinnati, Ohio (Carl M. Jacobs and Carl Phares, both of Cincinnati, Ohio, on the brief; Frost & Jacobs of Cincinnati, Ohio, of counsel), for appellee.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

This prolonged litigation has been before us on two previous occasions. Its former appearances are reported in Bach v. Friden,

---

6 Cir., 148 F.2d 407, and Bach v. Friden, 6 Cir., 155 F.2d 361. In the instant case, the district court sustained the motion of appellee to quash the return of service of summons. The consequence is that, on the present appeal, the only question to be answered is whether the appellee, a California corporation, so transacted its business in Ohio as to make valid and effective service of process upon the particular person served as its "managing agent."

This action was instituted in the United States District Court for the Southern District of Ohio. The Federal Rules of Civil Procedure authorize, under prescribed condition, service of process upon the managing agent of a foreign corporation, Rule 4(d) (3), 28 U.S.C.A. following section 723c; and permit service of process, not only in the manner prescribed by any statute of the United States, but also in the manner prescribed by the laws of the state in which the service is made, Rule 4(d) (7).

Ohio General Code, Section 11290, provides: "When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent." The courts of Ohio have declared that this statute should be liberally construed to facilitate the obtaining of jurisdiction over a foreign corporation doing business in Ohio, where a citizen of that state seeks redress upon a transaction with such foreign corporation. Simonson v. Gulf Refining Co., Com. Pl., 9 Ohio Supp. 81; 23 O.O. 486, Israel v. Champion Shoe Machinery Co., 25 Ohio N.P. (N.S.) 507. This liberality of interpretation was indulged, in the cases cited, in construing the activities of representative of foreign corporations as those of a "managing agent." See also Sprung v. E. I. du Pont de Nemours & Co., Ohio App., 34 N.E.2d 41, 16 O.O. 352, appeal dismissed, 136 Ohio St. 94, 23 N.E.2d 947; Beach v. Kerr Turbine Co., D.C.N.D. Ohio, 243 F. 706, 711; Toledo Computing Scale Co. v. Computing Scale Co., 6 Cir., 142 F. 919, 922. In the last cited case, this court sustained the action of the trial judge in overruling a motion to dismiss, made upon the ground that the person served was not a managing agent of the foreign corporation sued in the United States District Court. Judge Severens commented upon the liberality of interpretation which had been accorded the Ohio statute by the Supreme Court of that state.

In well prepared briefs, containing elaborate citation and discussion of authorities, attorneys for the contending parties have presented their conflicting conclusions. Myriads of opinions have been published upon the often debated issue of the validity of service of process upon foreign corporations in varying factual settings. There would seem to be no benefit to be derived from an extended discussion of other cases merely to point out circumstances either analogous to or distinguishable from those confronted in the case at bar. We would refer to an erudite opinion upon the general topic written by Judge [now Mr. Justice] Rutledge in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 515, 146 A.L.R. 926, wherein he asserted that the fundamental principle underlying the "doing business" concept seems to be the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not inclusive of the final stage of contracting; and that very little more than "mere solicitation" is now required to effectuate the result that a foreign corporation is "present" in a state for jurisdictional purposes. We see no guiding light in two opinions of this court which have been stressed by appellee. Mathews Conveyer Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73; Ken-Rad Corporation v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251. In neither case was an issue of service of process involved. Both cases are, moreover, plainly differentiable upon their facts from the over-all situation confronted here.

Two of the earlier opinions which may be found interesting for comparison here are Carroll Electric Co. v. Freed-Eisemann Radio Corp., 60 App.D.C. 228, 50 F.2d 993 (D.C.App.); and Real Silk Hosiery Mills v. Philadelphia Knitting Mills Co., 3 Cir., 46 F.2d 25. Two recent opinions reversing district court orders which quashed service of progress on foreign corporations are illuminative: that of Judge Evan Evans in Clover Leaf Freight Lines, Inc. v. Pacific

Coast Wholesalers Association, 7 Cir., 166 F.2d 626, and that of Judge Learned Hand in Hyman Bomze et al. v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33. Each jurist placed emphasis, as we do, upon the import and controlling effect of the opinion of Chief Justice Stone in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

In our own case of Lasky v. Norfolk & W. Ry. Co., 6 Cir., 157 F.2d 674, the district court had set aside the service of a summons and dismissed the case, where the service had been made upon the agent of a railway company, no part of its lines being located within the district in which the action was brought. The railway company, however, maintained an office within the district for the solicitation of freight and passenger business, and service of the summons was made upon its district manager there. We reversed, upon the authority of the International Shoe Company case, supra, pointing to the holding there that a foreign corporation, systematically and continuously employing residents of a state to canvass for orders, may be sued in the state canvassed. We called attention to the elaborate review of the authorities by the Chief Justice and to his statement that the "presence" of a corporation in a state, other than that of its origin, as well as within the borders of that state, can be manifested only by activities carried on in its behalf by those authorized to act for it; and that such contacts of a corporation as make it reasonable, in the context of our federal system of government, to require the corporation to defend a particular suit brought elsewhere than in the state which chartered it may satisfy the demands of due process.

It was not to be doubted that the opinion of the Supreme Court in the International Shoe Company case manifested a broadened viewpoint toward the right of citizens to sue a non-resident corporation by service of process upon its representatives, whose activities formerly frequently were considered not to constitute "doing business" by the corporation or to render it "present" for jurisdictional purposes within the state of the forum. Chief Justice Stone asserted that the boundary line between activities which justify the subjection of a corpora-

tion to suit and those which do not cannot be simply mechanical or quantitative; that the test is not merely whether the activity which the corporation has seen fit to secure through its agents in another state is a little more or a little less; but that whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.

■ Our function in a case of this character is to examine carefully the specific facts of record so as to determine whether the aggregate of its intra-state transactions require the non-resident corporation, in conformity with the true intent of the International Shoe Company opinion, to respond to an action brought against it in the local jurisdiction. Wherfore, we proceed to an examination of the facts.

■ The United States Marshal's return certified that the summons, together with a copy of the complaint, had been served personally on Grant Drummond, Managing Agent, in the office of the Friden Calculating Machine Co., 35 E. 7th Street, Cincinnati, Ohio. The motion of appellee to quash the return of service was joined with, and asserted to be in lieu of, a motion to dismiss on the same grounds. The district court overruled the motion to dismiss and, as previously stated, sustained the motion to quash.

The motion averred that the defendant, a California corporation, was not subject to service of process within the Southern District of Ohio; that it had not been properly served with process; and that the court had no jurisdiction over its person. Affidavits of the treasurer of the defendant corporation and of Grant Drummond, its sales agent upon whom the summons and complaint had been served, were filed in support of the motion; and Drummond, upon call of the plaintiff, was cross-examined and was also questioned by defendant's attorney at the hearing.

The affidavit of the treasurer asseverated that the appellee corporation exercises no control, supervision or management over the activities of Drummond; that he has no authority to bind the appellee "in any transaction, or in any manner whatsoever"; but

that Drummond purchases its products and resells them for his own account "as an independent contractor." The affidavit denied that the California corporation does business in Ohio, or is subject to process there; and affirmed that no officer or agent of the company is stationed in Ohio, and that no agent has ever been appointed by it to accept service of process in that state.

In his affidavit, Drummond declared that, under a contract with the appellee, copy of which he attached to his affidavit, he is engaged in numerous listed counties in Ohio, Indiana, and Kentucky, in the business of selling, servicing and repairing accounting machines manufactured by the California corporation. His sworn statement asserted that he purchases from appellee calculating and accounting machines and parts at a discount from the prices listed in the contract and that he is not its managing agent, or its agent in any capacity, but "is acting as an independent contractor in the purchase and resale" of appellee's products for his own account. He swore further that he has never been authorized by appellee to accept service of summons or other process for it.

The Sales Agent's Agreement which Drummond made an exhibit to his affidavit is in printed form and contains 31 numbered paragraphs, detailing the basis of operation and the relationship between the agents and the appellee corporation, which has, according to one of its advertising circulars, "approximately 250 Company Controlled Agencies throughout the United States and Canada." Moreover, the sixteenth paragraph of the agreement provides that a lengthy printed sales manual, prepared by the company, is made a part of the contract. This sales manual is declared by the contract to be binding upon all the company's sales agents, even with respect to future amendments except such as may affect the discount rate to the sales agent.

The contract provided that Drummond should have the "sole and exclusive right to sell and to service Friden Calculating Machines" in his designated territory; and that, during the period of the agreement, he should not further the interest of any other calculating machine company or "engage in any other general business without the written consent of the Manufacturer first had and obtained." The agent was required to find purchasers and to sell them the products of the company at prices fixed by it; and all orders were to be taken in the name of the company, which reserved the right to refuse any order submitted. It is important to observe that the attached Sales Manual required by "Iron Clad Rule" that "the specific machine MUST be delivered to the customer to whom its is assigned."

The contract required that the agent establish himself at a location acceptable to the company; that the business be conducted in the name of "Friden Calculator Sales Agency"; and that this name be prominently displayed on the door, stationery, and advertising matter. According to the testimony of Drummond, the actual sign on his door read: "Friden Calculating Machine Agency, Grant Drummond, Manager." It was further provided in the contract that the telephone number used by Drummond should be listed in the classified section of the local telephone directory under the name, "Friden Calculator Sales Agency."

All communications between the agent and the company were, under the terms of the contract, to be kept confidential and, upon termination of the relationship, surrendered to the company, whose representatives were to have free access to the office and files of the agent. The company made a one-year guarantee of the machines, and agreed to sell at cost service tools to the agent and to supply him with all advertising matter, contract forms, and "any other printed matter which, in the opinion of the Manufacturer, is ncessary in the operation of the business of the Sales Agent."

An important and significant provision of the contract was that the agent agreed to maintain a policy of liability insurance on all vehicles used in connection with the sale of the company's machines, and that the amount of insurance taken should be satisfactory to the company.

The agent was forbidden to mortgage any machine in his possession or on consignment from the company, and was even foreclosed from becoming a surety, guaran-

tor, or endorser, without the company's consent.

Even though the Sales Manual informs the agent that he is "no longer buying machines for resale," the appellee contends that Drummond was an independant contractor because outright sales were made to him. The argument is without merit, as appears from the foregoing analysis of the salient points in the Sales Agent's Agreement and in the company's Sales Manual.

Nor is the provision in the contract that the agreement "shall not be construed as creating an employer-employee relationship for any purpose whatsoever" to be considered seriously in negation of the concept that the continuous and systematic activities of the appellee corporation were sufficient to constitute "presence" in Ohio, within the ambit of the International Shoe Company case. Mere formalism should give way to the real substance of the agreement which, in effect, constituted Drummond as a "Managing Agent" in Ohio of the California corporation. It follows that the appellee is amenable to suit in a state or federal court of Ohio by appropriate service upon Drummond.

Any lingering doubt as to the correctness of this conclusion would be quickly dispelled by consideration of the usual manner in which the agency transactions were financed. Any order secured by the agent was taken in the name of the appellee and the original copy thereof, signed by the purchaser, was forwarded by the agent to the appellee company. Within four or five months, the machine was shipped by appellee to the agent, who paid the appellee for it out of his own funds at a discount from the list price. The agent installed the machine and instructed the purchaser in its use. The agent thereupon notified the appellee of the installation; and, upon receipt of this notice, appellee sent its invoice to the agent whose duty it was to see that the invoice was delivered to the purchaser. The invoice directed the purchaser to remit the purchase price to the appellee company, which was invariably done. It should be observed that, at this stage of the transaction, the appellee had been paid by both the agent and the customer for the same machine. Upon receipt of the purchase price from the customer, however, the appellee company remitted the agent the amount paid by the customer.

No resort to the doctrine of forum non conveniens (Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839) is, in our view, needed to buttress the conclusion which we have reached.

The order sustaining the motion to quash the return of the alias summons is reversed, and the cause is remanded to the district court for trial upon the merits.