### KENDRICK v. SEABOARD AIR LINE R. R.

**Civ. No. 6754.**

United States District Court,
E. D. Pennsylvania.

Feb. 8, 1949.

Richter, Lord & Farage, by Joseph S. Lord, III, Philadelphia, Pa., for plaintiff.

Harold Scott Baile, Philadelphia, Pa., for defendant.

GANEY, District Judge.

Plaintiff, an employee of the Pullman Company, brought this action[1] to recover damages for personal injuries sustained by him at Columbia, South Carolina, as the result of the alleged negligence of defendant (hereinafter referred to as Seaboard). Jurisdiction of this court over the subject matter is based on diversity; plaintiff being a citizen of the State of Pennsylvania and a resident[2] of the Eastern District of that state, the district of this court; the defendant a corporation organized and existing by virtue of the laws of the State of Virginia, with its main office at Norfolk of that state.

Seaboard is engaged in operating a railroad as a common carrier of passengers and freight in the States of Virginia, North and South Carolina, Georgia, Florida and Alabama. It has never operated any railroad line, station, terminal, yard, shop or other transportation facility within the State of Pennsylvania. Its passenger coaches and freight cars travel over railroad lines in this state between New York City and Washington, D. C., as part of the Pennsylvania Rail-

---

1. A previous action involving the same parties was dismissed without prejudice.

2. There can be no question that the venue is proper here. Section 51 of the old Judicial Code, 28 U.S.C.A. § 112 [1948

Revised Judicial Code, 28 U.S.C.A. § 1391], provided that in diversity cases, suit may be brought in the district of the residence of either the plaintiff or defendant.

road Company's or other domestic railroads' trains, and between Washington, D. C. and Richmond, Va., as part of the R. F. & P. Railroad. It has not registered to do business in Pennsylvania, nor has it designated an agent upon whom process may be served in this state. Since 1920, however, it has maintained an office in Philadelphia, Pennsylvania, consisting of a passenger and a freight department. This office exists for the purpose of soliciting business in the territory comprising the south eastern portion of Pennsylvania, the southern half of New Jersey and the entire State of Delaware, from those persons who may desire to travel, and those firms which ship freight, south of Richmond, Virginia, Seaboard's northern terminal. The local department heads bear the titles, "Assistant General Passenger Agent" and "General Agent of the Freight Department" respectively. Other employees of the passenger department are a traveling agent, a clerk and a stenographer; three traveling agents and two clerks are the additional employees in the freight department. These employees are hired by the main office on the recommendation of the local department heads. Their employment is full time and steady.

█ In the instant action, the summons was served on the Assistant Passenger Agent at Seaboard's office in Philadelphia. Seaboard's motion to dismiss under Rule 12(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A., raises the question whether it is subject to service of process within the State of Pennsylvania. Relying on Green v. Chicago B. & O. Ry. Co., 1906, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed 916, Murray v. Great Northern Ry. Co., D.C.E. D.Pa.1946, 67 F.Supp. 944, and Shambe v. D. & H. R. Co., 1927, 288 Pa. 240, 135 A. 755, Seaboard contends that all its activities in this state are but incidental to the mere solicitation of business here. Plaintiff on

the other hand claims its activities amount to more than mere solicitation. Do a defendant's activities amount to the mere solicitation or more than that is no longer the proper inquiry since International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, for determining whether it is amenable to the process of the forum. Has a defendant such contacts with the state involved as makes it reasonable, consistent with due process of law, to require it to accept process, otherwise validly served upon it, in the state, is the decisive question. It would seem that the undue burdening of interstate commerce, the disconnection between the alleged obligation or liability with a defendant's local activities, inconvenience to it or the unseasonableness of requiring it to defend the particular action in the forum are factors which no longer have any bearing on the question of jurisdiction over its person in view of Section 1404(a) [3] of Title 28, U.S.C., permitting change of venue. We therefore revert to the facts.

The Philadelphia office is leased in the name of Seaboard, it maintains records of local activities conducted there and owns all the office furniture. Seaboard's name appears on the office doors, it has listings in the local telephone directories, and uses its name, local address and telephone number on its letterhead. It also maintains a local bank account for miscellaneous expenses.

Activities in the passenger department are regularly and customarily conducted as follows: When requests for passage over Seaboard's lines are received, the prospective passengers are advised what reservations are available and when they may visit the office to purchase their tickets. Seaboard then obtains the tickets from the connecting line, over which its coaches are transported to Washington, D. C. This

3. This section provides: "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". The provisions of this section may be applied in actions brought prior to its effective date.

Schoen v. Mountain Producers Corporation, 3 Cir., 170 F.2d 707, 714, 5 A.L.R. 2d 1226. That the plaintiff, while in the course of his employment, was injured in the State of South Carolina are the only facts concerning the accident of which we are aware.

connecting line is usually the Pennsylvania Railroad Company. In return for the tickets, Seaboard gives its "street orders", seventy two hour credit extension slips bearing the name of the prospective passengers and their destinations. When the prospective passengers visit the office and pay the amount required for their transportation, Seaboard transfers to them all the tickets which they will require to get to the point desired by them.[4] The cash received is then handed over to the connecting line, which return the "street orders" to Seaboard. (The connecting line takes its proportionate share of the cash, allots a portion to the R. F. & P. Railroad, which transports Seaboard's coaches between Washington, D. C. and Richmond, Virginia, and credits the balance to Seaboard). But there are times when only Seaboard tickets are sold and only Seaboard money collected. This occurs whenever the prospective passenger possesses passes or tickets for transit over the connecting lines. If the prospective passengers know at the time they make reservations for the south-bound trip, when they will wish to return north, Seaboard also obtains the reservations and tickets for the return trip. These agents who drum up business throughout the territory make a special effort to get groups of passengers, such as athletic teams and convention bound parties, in addition to the individual passengers, to travel by way of Seaboard lines. If complaints are made by passengers residing in the territory in question, the main office notifies the Philadelphia office. The proper employee then calls on the complaining parties, obtains all the facts possible, and attempts to pacify them or to show them where they may have been wrong in making the complaints. Adjustments, if any, are made through another source. The office retains in its files, for a period of time, records showing the reservations completed locally, the names of the organizations that travel in groups, and the cancelled copies of the "street orders". These records are kept, both for statistical purposes and making up mailing lists. Informational pamphlets, such as railroad maps and time tables are distributed at the office. In 1945, for example, between fifteen hundred and two thousand passengers were handled through Seaboard's Philadelphia office.

The employees of the freight department are customarily and systematically occupied with soliciting both outbound and inbound freight business and the giving such information and assistance to shippers and prospective shippers as will induce them to patronize Seaboard's lines. Yearly these employees call on from five thousand to sixty-five hundred prospective customers in the given territory. A monthly report is sent by them to the main office showing the total tonnage of freight shipped from this area, destined to travel over Seaboard's lines. From January to August 1948, inclusive, a total of ten thousand, eight hundred sixty five carloads of freight originated in this area. They handle no cash, way-bills, or bills of lading, but do, in the course of a year, trace several hundred lost shipments of freight.

We think these activities, which may best be characterized as the selling of service, evidence sufficient contacts with the State of Pennsylvania as to render Seaboard amenable to the process of this court. See International Shoe Co. v. State of Washington, supra; United States v. Scophony Corporation of America, 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091; Frene v. Louisville Cement Co., 1943, 77 U.S.App. D.C. 129, 134 F.2d 511, 146 A.L.R. 926; Clover Leaf Freight Lines, Inc. v. Pacific Coast Wholesalers' Ass'n, 7 Cir., 1948, 166 F.2d 626; Bach v. Friden Calculating Mach. Co., Inc., 6 Cir., 1948, 167 F.2d 679; Willett v. Union Pacific R. Co., D.C.N.D. Ohio, 1948, 76 F.Supp. 903. The fact that the lease for the office was executed at Seaboard's main office, the rent and expenses therefor, and the pay of the local employees are paid by checks sent from Norfolk, Virginia, and that the office supplies and advertisements are sent from the same place, can have no effect on our conclusion that

---

4. This obviates the necessity of the passenger purchasing tickets and boarding a different train every time he reaches a different line, thus insuring a continuous passage with a minimum of delay and confusion.

the defendant Seaboard is present here. Once the contacts with the state of the forum have been established, other transactions of a defendant, by comparison or otherwise, may not wipe out or outweigh those contacts.

Motion denied.