Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor,

v.

MUTUAL READERS LEAGUE, INC., and Saul Schenker.

Civ. A. No. 28385.

United States District Court
E. D. Pennsylvania.

Aug. 3, 1961.

Charles Donahue, Solicitor, Sylvia S. Ellison, Acting Asst. Solicitor, Washington, D. C., Ernest N. Votaw, Regional Atty., and Marshall H. Harris, Atty., U. S. Dept. of Labor, Chambersburg, Pa., for plaintiff.

John Silard, and Joseph L. Rauh, Jr., Washington, D. C., Dilworth, Paxson, Kalish, Kohn & Dilks, by Wm. T. Coleman, Jr., Philadelphia, Pa., for defendants.

WOOD, District Judge.

This is an action to restrain the defendants from violating certain provisions of the Fair Labor Standards Act (29 U.S.C.A. § 201 et seq.). Section 17 of that Act (29 U.S.C.A. § 217, 1960 Supp.)

confers upon District Courts jurisdiction over the subject matter of this action. The defendant, Mutual Readers League, Inc. (hereinafter called "Mutual") has moved to dismiss the Government's complaint on two grounds: 1) Mutual, as a foreign corporation, is not subject to the jurisdiction of this Court; and 2) Mutual was never validly served with process. Under the view we take of these issues, the validity of the service of process depends in large measure upon the power of this Court to exercise its jurisdiction over the person of the defendant Mutual. We shall, therefore, first take up the issue of jurisdiction.

### Historical Background

The defendant Mutual is a Delaware Corporation with its principal place of business in Des Moines, Iowa. It is a subsidiary of Cowles Magazines, Inc., publishers of Look magazine. Mutual's General Manager describes the corporation's business as "(a) the clearing of subscriptions to magazines and other periodicals with the publishers thereof * * * and (b) arranging through authorized independent contractor-dealers in various states for the sale on an installment basis of subscriptions to those magazines and periodicals for which Mutual has clearance agreements with the publishers * * *" (Affidavit of Byron Lodwick, paragraph 3.) We note, however, that the "clearing" of subscriptions obtained for Mutual by its dealers appears to be merely a perfunctory function of Mutual.[1] Mutual's principal business interest appears to us to be the obtaining of subscriptions to the periodicals published by the companies with which Mutual has "clearing agreements."[2]

---

1. See Mutual's answers to interrogatories, answer No. 28; and see also Mutual's promise in paragraph 8 of the franchise agreement with Schenker to clear all of the subscriptions obtained by Schenker so long as they relate to periodicals of publishers with whom Mutual has clearance agreements.

2. Mutual has appointed some forty-five dealers in nineteen states and the District

of Columbia to solicit subscriptions in those areas. Mutual is committed to the publishers with which it has clearance agreements to maintain certain sales quotas for the various publications. Mutual must, in turn, impose certain sales quotas upon its dealers. The quota provision of the agreement with the Pennsylvania dealer, Schenker, is described in the agreement as "an essential covenant" thereof. (See Mutual's answers to in-

The defendant Saul Schenker (hereinafter called "Schenker"), is an individual doing business under the name "Mutual Readers League of Pennsylvania," pursuant to an agreement entered into between Schenker and Mutual dated October 7, 1958. This agreement authorizes Schenker to sell installment subscriptions for all magazines for which Mutual has clearance agreements with the publishers, but prohibits him from selling subscriptions to any other publications. The sales of subscriptions must be made according to the prices and conditions set forth by Mutual; thus Schenker is not permitted to exercise any business judgment of his own in the area of price or terms of sale. As previously mentioned, Mutual requires Schenker to meet certain production quotas, and Mutual has the right to examine all of Schenker's business records at any time to check on the progress of Schenker's men in securing the requisite number of subscriptions. On Monday, Wednesday and Friday of each week, Schenker is obligated to remit to Mutual forty percent of all money collected on the subscription contracts; but Mutual has the unilateral right to increase the percentage of the subscription price which must be remitted by Schenker. Before this money is sent to Mutual, and while it is still in Schenker's possession, it is designated by the dealership agreement as "the property of Mutual," and as a "trust fund" for Mutual. (Agreement, paragraph 13.)

The agreement further provides that before Schenker may use any form of order, or issue any customer receipt, or employ any advertising material, circulars, etc., these papers must first be submitted to Mutual for its approval. Finally, the agreement designates Schenker as an "independent contractor," having the sole right to employ salesmen for solicitation of subscriptions. These salesmen are themselves carefully described in the agreement as Schenker's men (employees or independent contractors), *not* Mutual's employees.

Pursuant to the dealership arrangement, Schenker has secured as much as $323,226 of subscriptions in Pennsylvania within one year.[3]

These facts significantly show the degree of control of Mutual over Schenker's business and the importance of Schenker's Pennsylvania operation to Mutual's very business existence. Our legal conclusions drawn from these facts will be explained in more detail below.

### Contentions of the Parties

The Government's complaint alleges that Both Mutual and Schenker employ nine persons in each of their offices in Allentown and Philadelphia, Pennsylvania, under conditions of employment which violate the Fair Labor Standards Act.[4] Mutual contends that the complaint should be dismissed as to it because this Court has no jurisdiction over it. This contention is based upon the assertions that Mutual has no property, office, or agents in Pennsylvania and does no business in Pennsylvania; that Schenker is an independent contractor with his own business; that the employment conditions which violate the Act, if any, are under the sole control of Schenker; and that even if Schenker were deemed the agent of Mutual, his activities consisting merely of soliciting subscriptions, do not constitute "doing business" in Pennsylvania for the purpose of conferring jurisdiction in this Court. In support of this conclusion, Mutual relies on a line of cases decided by Federal Courts, holding that mere solicitation of subscriptions to magazines does not con-

terrogatories Nos. 27 and 31. See also paragraph No. 5 of the agreement.)

3. See Mutual's answers to interrogatories, No. 3.

4. Generally speaking, the alleged violations consist of paying less than the minimum wage, employing oppressive child labor, failing to pay time-and-a-half for hours worked over forty per week, and failing to keep the records of employment required by the Act.

stitute "doing business" for the purpose of exercising jurisdiction over a foreign corporation.

On the other hand, the Government contends that even though the dealership agreement designates Schenker as an "independent contractor," Mutual's control over Schenker's operations, and the business realities of the situation, clearly demonstrate that Schenker is Mutual's agent; that Schenker's activities constitute doing business in Pennsylvania; that Schenker's business is Mutual's business; and that therefore Mutual is subject to the jurisdiction of this Court. The Government relies upon the recent cases decided by the Supreme Court of the United States holding that a foreign corporation may be subject to the jurisdiction of state courts if that foreign corporation has "minimum contacts" with the state sufficient to warrant forcing the corporation to trial in that state without violating traditional concepts of fair play and substantial justice.[5]

In addition, the Government correctly points out that the relationship between Mutual and the door-to-door salesmen employed by Schenker may be an employer-employee relationship under the expressed policy and the terms of the Fair Labor Standards Act; it being settled law that the finding of an employment relationship under that Act does not depend upon traditional principles of common law. In any event, says the Government, the existence of that relationship should be tested at the trial with Mutual as one of the defendants.

### Applicable Law Re Jurisdiction

All counsel agree that the question of jurisdiction presented by the present motion is a question to be determined by "Federal law." It has been previously stated that the Court's jurisdiction over the subject matter of this action depends upon the Fair Labor Standards Act; and the questions presented by the suit are questions arising under a Federal statute. Therefore, we believe that Pennsylvania statutory law and case law on the issue of the jurisdiction of Pennsylvania courts over foreign corporations have no bearing on this case. State law has been followed by Federal Courts in *diversity cases* to determine the jurisdiction of the Federal Court over a foreign corporation. Apparently, the Circuit Courts of Appeal are not in accord as to whether state law should be determinative of a Federal Court's jurisdiction even in diversity cases.[6] However, it seems clear that "Federal law" should control the question of our jurisdiction in this case.[7] It is not so clear just what Federal law exists to guide our determination.

Mutual has relied upon a line of cases, which although *decided by Federal Courts,* held that foreign corporate defendants were not "doing business" under a *state* test of doing business. Obviously, these cases do not provide us with "Federal law" on the subject of a Federal Court's jurisdiction over a foreign corporation in a suit arising under a Federal statute. Furthermore, many of the cases relied upon by Mutual were decided before the Supreme Court's decisions in International Shoe and McGee, supra. Of course, these cases greatly expanded the reach of the state courts over foreign corporations, and substituted the test of "minimum contacts" with the state for the old fictions of corporate

5. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

6. See 56 Columbia Law Review 394 at 398. The Court of Appeals for the Third Circuit appears to be committed to a state law test of jurisdiction in diversity cases; see Partin v. Michaels

Art Bronze Co., Inc., 3 Cir., 1953, 202 F.2d 541.

7. In the Partin case, supra, Chief Judge Biggs stated:
   "Concededly, federal jurisdiction must be determined by federal law, albeit federal law *in diversity cases* calls for reference to the background of state law." 202 F.2d 545. (Emphasis supplied.)

"presence" and "consent." [8] For these reasons, we think the cases relied upon by Mutual in support of the proposition that solicitation of subscriptions does not constitute doing business within a state are cases which are no longer good law.

We think that under the test of International Shoe, and especially in light of McGee, the activities of Schenker are clearly the doing of business within Pennsylvania.

Two questions remain: 1) Is Schenker's business really *Mutual's* business for the purpose of concluding that Mutual is doing business in, or has the minimum contacts with Pennsylvania? 2) Are the limits of our jurisdiction to be found in the opinions of the Supreme Court in International Shoe and McGee?

■ We shall dispose of the second question first. We noted earlier that Federal cases applying state laws to resolve jurisdictional questions provide us with no Federal law. Technically, neither do the cases of International Shoe or McGee.[9] Those cases set forth the limits to which a state could go under the Due Process Clause of the Fourteenth Amendment in exercising jurisdiction over foreign corporations. Obviously, the Fourteenth Amendment has no effect on the jurisdiction of Federal District Courts in cases arising under Federal law. The Fifth Amendment contains a Due Process Clause, but its limitation on the jurisdiction of the Federal District Courts over foreign corporations has never been clearly stated. The result is that we are left at best with an anomolous body of "Federal law" from which to discern the principles applicable to this case. The problem has been recognized before:

"The Federal Rules of Civil Procedure provide the manner in which service of process may be made on a foreign corporation, and define the geographical extent of effective process in all cases not covered by federal statutory provisions as the 'territorial limits of the state in which the district court is held.' However, there is no rule or statute which informs the courts when foreign corporations are amenable to process so that in personam jurisdiction may be had over them in diversity and most nondiversity suits.[3]

"3. The Judiciary Act of Sept. 24, 1789, c. 20, 1 Stat. 73, was silent not only as to personal jurisdiction over corporations but as to whether they were 'citizens' for purposes of diversity jurisdiction at all. The attribution of citizenship to the corporation, like the determination of its amenability to process, has been 'tantamount to judicial legislation.' " 69 Harvard 508.

In spite of the doubtful applicability of the formula of the International Shoe case to questions of Federal jurisdiction, some Federal Courts have applied that formula to cases where the jurisdiction of the Federal Court depended upon Federal law.[10] Although we have found no case decided by the Circuit Court of Appeals for the Third Circuit which deals with this problem, we think the reasoning of the Court in the Lone Star Package Car Co. case, cited below, is correct. In that case, the Court said:

"In any event, so much has now been written upon the subject that we content ourselves with saying that we are satisfied that insofar as cases are governed by federal law, the question of whether they are to be tried in one locality or another is now to be tested * * *

---

8. See 25 University of Chicago Law Review 569, "The Supreme Court, The Due Process Clause, and The In Personam Jurisdiction of State Courts: From Pennoyer to Denckla: A Review."

9. See 69 Harvard 508, 515, where the author states: "Why the International Shoe formula, which dealt with the constitutional limits of state jurisdiction should affect federal jurisdictional standards is not made clear."

10. See Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F. 2d 147; Consolidated Cosmetics v. D-A Publishing Co., 7 Cir., 1951, 186 F.2d 906.

simply by basic principles of fairness. (Citing International Shoe, and other cases.) It is true that in most of the cases just cited the question has arisen as to constitutional limitations imposed upon the states but the broad statements of policy expressed, particularly in the International Shoe Co. case, supra, seem to us to be extended also to cases where the jurisdiction of the federal court depends upon federal law." 212 F.2d at page 155.

We hold, therefore, that the limits of our jurisdiction in this case are to be determined by looking to the "contacts" which Mutual has with the Commonwealth of Pennsylvania; if they are substantial enough to require Mutual to defend this lawsuit here without violating traditional concepts of fairness and substantial justice, we have the power to render a judgment for or against Mutual.

### Relationship between Schenker and Mutual

██ We have already set forth in detail the business arrangement between Mutual and Schenker. Suffice it to state that we think Schenker's business is sufficiently controlled by Mutual and sufficiently necessary to Mutual's operations to enable us to conclude that Schenker is Mutual's agent in Pennsylvania for the purposes of service of process on Mutual and of exercising our jurisdiction over Mutual.[11]

Having concluded that Schenker's business is Mutual's business in Pennsylvania, we think that the quantity and nature of those business activities are more than sufficient to constitute the minimum contacts with the Commonwealth of Pennsylvania required under the test of International Shoe. We hold, therefore, that we have jurisdiction over the defendant Mutual.

### Validity of Service of Process

Rule 4(d) (3) of the Federal Rules of Civil Procedure 28 U.S.C.A., provides in pertinent part as follows:

"Service shall be made as follows:

\* \* \*

"(3) Upon a domestic or foreign corporation \* \* \* by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process \* \* \* "

The decided cases hold that a person in charge of the local business of a foreign corporation is a "managing agent" within the meaning of the Rule.[12] We hold

---

11. See Nugey v. Paul-Lewis Laboratories, Inc., D.C.S.D.N.Y.1955, 132 F.Supp. 448. In that case the defendant was a foreign corporation represented in New York by an "independent contractor" who solicited orders for it on a commission basis. In denying the defendant's motion to dismiss for lack of jurisdiction, the court stated:

"The quality and nature of Reisman's activity in behalf of the defendant are such that it would not burden the defendant unduly to bring it here for trial. Reisman was not buying the defendant's products on his own account and then reselling them. He was, in all acts, the agent of the defendant, regularly and systematically servicing its business, and in regular and intimate communication with its chief executive officers." 132 F. Supp. at page 449.

See also Kahn v. Maico Company, 4 Cir., 1954, 216 F.2d 233.

12. In the case of Remington Rand, Inc. v. Knapp-Monarch Co., D.C.E.D.Pa.1956, 139 F.Supp. 613, Judge Wright stated:

"Where as here, the activity of defendant in this district is sufficient so as to make it amenable to suit, service of process upon a responsible party in charge of any substantial phase of that activity is sufficient for effective service of process." 139 F.Supp. at page 621.

See also Bach et al. v. Friden Calculating Machine Co., Inc., 6 Cir., 1948, 167 F. 2d 679, where the court stated:

"Mere formalism should give way to the real substance of the agreement which, in effect, constituted Drummond as a 'Managing Agent' in Ohio of 'the California

that Schenker is the "managing agent" of Mutual, and that therefore the service of process upon Schenker was valid service upon Mutual.

### Order

And now, to wit, this 3rd day of August, 1961, It Is Hereby Ordered that the motion to dismiss of the defendant, Mutual Readers League, Inc. is Denied.

corporation. It follows that the appellee is amenable to suit in a state or federal court of Ohio by appropriate service upon Drummond." 167 F.2d at page 683. And in the case of Lone Star Package Car Co., supra, the court said:

"If a corporation's business is so substantial as to render the corporation amenable to suit in the state, its principal agent in charge of activities within that state meets the test of a 'managing agent.'" (Citing cases.) 212 F.2d at page 152.