**LEKTOPHONE CORPORATION v. PHIL-ADELPHIA STORAGE BATTERY CO. et al.**

**No. 7881.**

District Court, E. D. Pennsylvania.

Sept. 5, 1934.

Charles I. Thompson and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., and Pennie, Davis, Marvin & Edmonds, of New York City, for plaintiff.

Thomas Hart, Hepburn & Norris, and Howson & Howson, all of Philadelphia, Pa., and Hugh M. Morris, of Wilmington, Del., for defendants.

KIRKPATRICK, District Judge.

These are additional interrogatories filed by the plaintiff in a suit in equity against two defendants, Philadelphia Storage Battery Company and J. S. Timmons, Inc., who will be called Philco and Timmons respectively. The bill of complaint prays for an injunction to restrain patent infringement and violations of covenants of a license agreement which the plaintiff entered into with Timmons, and also an accounting for damages for past violations. Relief is sought against Timmons as an original party to the agreement, and against Philco upon the theory that Philco had and exercised such power and dominance over the affairs of Timmons that the latter was in effect a mere instrumentality, adjunct, or department of Philco.

■ If such power to direct operations and manufacture is, really, in Philco, it may be held liable for infringing acts on the part of the subsidiary "as being its own act done through a controlled agency. * * * A court of equity may well look behind the corporate screen and determine where the real and responsible power lies." Westinghouse Electric & Mfg. Company v. Allis-Chalmers Company, 176 F. 362, 368 (C. C. A. 3); De Forest Radio Tel. & Teleg. Company v. Radio Corporation of America, 20 F.(2d) 598 (C. C. A. 3).

To the bill of complaint each of the defendants filed a separate answer. Both admit that from March 1, 1928, to June 19, 1933 (on which latter date the stock was surrendered for cancellation in connection with dissolution proceedings), Philco owned all of the capital stock of Timmons, except qualifying shares. Both deny, however, that Philco exercised the power which it had by virtue of such stock ownership to control, manage, and operate Timmons as a mere adjunct or instrumentality.

The interrogatories which are the subject of this motion supplement interrogatories previously filed and answered, and relate exclusively to the manner in which Timmons' business was conducted following the acquisition of all its stock by Philco. By their answers to the earlier interrogatories the defendants have admitted that, since the acquisition of the Timmons stock, Philco has exercised its rights of stock ownership to elect directors of Timmons; that all the directors so elected were persons associated with Philco, some as officers, some as directors, and some as employees; and that for each of the calendar years 1928, 1929, 1930, 1931, and 1932, Philco reported the income of Timmons to the United States government in a consolidated income tax return as being income received by a wholly owned subsidiary.

In response to interrogatories relating to the manufacturing operations carried on by Timmons for Philco since the acquisition of Timmons' stock by Philco, the defendants answered that such operations were carried on pursuant to an oral agreement by which Philco agreed to buy and Timmons agreed to manufacture Philco's requirements for loud speakers; that under the contract Timmons derived a profit on each loud speaker manufactured for Philco; and that up to January 1, 1929, the profit was based on a list price to all manufacturers and thereafter was "derived" at the rate of 2½ per cent. The basis upon which the 2½ per cent. profit was computed was not explained.

■ The issue thus raised comes down to the question whether, for all practical purposes, whatever the legal form may be, Timmons is a mere department of Philco. This is indisputably an ultimate fact in the case against Philco, although it may be of little or no importance in the case against Timmons. The pleadings and the interrogatories already answered have brought the inquiry to this point: The defendants admit corporate control by stock ownership and allied directorate and officers; they assert, however, complete disassociation and independence in the conduct of the Timmons business. If their assertion is true, the admitted fact of corporate control would, probably, not make Philco responsible for Timmons' acts of infringement. If, however, the business of Timmons is being conducted entirely by Philco so that, as in the Westinghouse Case, supra, Philco "has taken over all that is valuable in this business and made it a department of its own" and is "the unquestioned master, whose orders are obeyed," Philco's responsibility would follow.

The earlier interrogatories have established the fact that the conduct of Timmons' business is governed by an oral contract with Philco. Upon the nature of this contract the defendants base their claim of mutual independence. They have disclosed certain terms or phases of the contract relation. They now object to disclosing others, to which these interrogatories are directed.

■ But if the relation between these two defendants in the conduct of the business is an ultimate fact (as it unquestionably is), every detail of the arrangement partakes of that nature. All the interrogatories now objected to are directed to developing the entire arrangement between these two companies. As accurately summarized by the plaintiff, they seek to determine the following facts:

1. Ownership by Philco of the premises on which Timmons carries on its manufacturing operations and occupation of said premises by Timmons without payment of any rent or upon payment of rental so low as to be inconsistent with independence between Timmons and Philco.

2. Failure of Timmons to keep such records of its costs as would secure to an independent company the compensation due it under its agreement with Philco for a 2½ per cent. profit on manufacturing operations for Philco.

3. Purchase by Philco of raw materials for Timmons without charge to Timmons.

4. Employment by Philco of labor for Timmons without charge to the latter.

5. Payment by Philco of insurance premiums on policies insuring Timmons and reservation to Timmons of the beneficial interests under the policies.

6. Determination by Philco of the type, quantity, and cost of loud speakers manufactured by Timmons.

7. Employment by Philco of engineering staffs to work on Timmons' problems without charge.

8. Use by Timmons, without charge, of Philco's accounting staffs.

9. Design by Philco engineers of the loud speakers Timmons should manufacture.

10. Ownership by Philco of machinery used by Timmons.

11. Determination of profit which Timmons was to receive under the oral agreement between Philco and Timmons without taking into account items of cost which would be taken into consideration if Timmons were not operated as an adjunct or department to Philco.

All of the foregoing matters (with one exception to be noted hereafter) are in reality terms of the general oral agreement with Philco under which Timmons is operating—just as much so as the parts of the agreement which the defendants have already elected to disclose in the interrogatories answered. It is a wholly untenable position to take, for example, that the fact that Timmons was allowed a profit of 2½ per cent. upon loud speakers manufactured for Philco is an ultimate fact but that the facts that Philco, as a part of the arrangement, furnished engineering, labor, accounting, and raw materials without charge and designed and determined the types, quantity, and cost of loud speakers to be manufactured are merely evidentiary. In one sense, of course, no single one of the items involved is of itself an ultimate fact, but they are all parts or details of a single ultimate and vital fact which does not exist at all except as the sum of its parts.

■ The distinction drawn by many courts between ultimate facts and facts that are merely evidentiary is nearly always a difficult one to apply to concrete cases. Under any system of practice, the pleadings themselves constitute an inquiry in advance of hearing as to the ultimate facts, giving to that expression its precise and accurate meaning. However, as soon as we pass—as we must if interrogatories are to have any function at all—from the questions propounded and answered by the pleadings, we come to a large number of relevant and material facts ranging from general to particular, some of them a part of the issue, some closely and some remotely related to it. In this field the distinction between those facts which are ultimate (in the expanded sense in which most courts have used the term) and those which are merely evidentiary is likely to be vague and indefinite.

The only satisfactory rule is to accord a wide discretion to the court of first instance. Considerations of policy, of course, impose certain limitations. Thus it is easy to see that a party should not be required to disclose the sources of his evidence, the names or residences of his witnesses, or, as in Luten v. Camp (D. C.) 221 F. 424, their expert opinions upon controverted matters. Nor should the interrogatories be permitted to become merely the instruments of a general fishing expedition. Within these (and perhaps others) limitations, however, the sound judgment of the court as applied to the particular situation in hand rather than a rigid formula ought to govern.

The idea expressed in the foregoing paragraph seems to be in line with a late utterance of the Supreme Court by Mr. Justice Cardozo in Sinclair Refining Company v. Jenkins Petroleum Process Company, 289 U. S. 689, 53 S. Ct. 736, 737, 77 L. Ed. 1449, 88 A. L. R. 496: "Help for the solution of problems of this order is not to be looked for

in restrictive formulas. Procedure must have the capacity of flexible adjustment to changing groups of facts. * * * At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance. When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he needs. Equity Rule 58 (28 USCA § 723)."

The foregoing considerations apply to all of the interrogatories objected to with the possible exception of Nos. 21, 22, and 23 of the Timmons additional interrogatories and Nos. 17 (d), (g), and 19 (d) of the Philco additional interrogatories. The book entries and methods of bookkeeping of the two companies might be important evidence bearing upon the terms of the oral agreement in question, but they can hardly be part of the arrangement in themselves, and I think they cannot fairly be called more than merely evidentiary.

As to the admissibility and effect of the separate answers made by Timmons as evidence in the case against Philco, this will be determined at the hearing. The defendants' argument that agency cannot be established by proof of the declarations of the alleged agent is entirely beside the point. Agency can always be established by the testimony of the agent himself which is quite a different thing.

The defendants' objections to all the additional interrogatories to both defendants, with the exception of Nos. 21, 22, and 23 of the Timmons additional interrogatories and Nos. 17 (d) and (g) and 19 (d) of the Philco additional interrogatories, specified above, are overruled and the defendants are directed to make answer.