Fred B. BERGHOLT, Plaintiff,

v.

HUDSON MOTOR CAR COMPANY, a corporation, and Hudson Sales Corporation, a corporation, Defendants.

Civ. No. 4371.

United States District Court
D. Minnesota, Fourth Division.
April 14, 1954.

Harry H. Peterson, V. J. Hermel, Minneapolis, Minn., for plaintiff.

Horace Hitch of Dorsey, Colman, Barker, Scott & Barber, Minneapolis, Minn., Elmer Jamison Gray, Detroit, Mich., of counsel, for defendant Hudson Motor Car Co.

NORDBYE, Chief Judge.

Defendant Hudson Motor Car Company is a Michigan corporation and maintains its principal place of business in that state. It does no business in the State of Minnesota except in so far as its relationship with defendant Hudson Sales Corporation might be construed as establishing such a fact.

The complaint in this action alleges that Hudson Sales does business in the State of Minnesota; that defendant owns and controls the business of Hudson Sales and that "defendants, and each of them, are committing acts of infringement of plaintiff's certain Letters Patent * * * by making, using, or selling streamline bodies * * * embodying the invention set forth and described in Letters Patent, bearing No. 2,028,184 * * *".

It is admitted that Hudson Sales is the wholly-owned subsidiary of the Hudson Motor Company and distributes to retail dealers in Minnesota and elsewhere a large proportion of Hudson Motor's output of automobiles and parts. The affidavits of the agents of the defendant Hudson Sales, which are not controverted by the plaintiff, show that no dealers in Minnesota contract with Hudson Motors, but contract solely with the zone manager of Hudson Sales Corporation. They further show that Hudson Sales transmits all orders for automobiles and parts to Hudson Motor in Detroit for acceptance there. Hudson Motor makes all deliveries to Hudson Sales, which in turn ships the automobiles either to its local storage place or directly to dealers who have placed orders. The transactions between the two companies are those of purchase and sale—title passing in Detroit, Michigan, and invoices being rendered there to Hudson Sales. These transactions are recorded in the separate books of account of the two corporations. The corporations maintain separate bank accounts, each has its own employees, and from 1947 to 1952 have prepared and issued separate financial statements. The income tax reports of Hudson Motor do not reflect the income of Hudson Sales, and profits of Hudson Sales not paid out in dividends have been retained by it.

Exhibits 1 and 1A in this cause are copies of the Hudson Distributor Sales Agreements which are in effect between Hudson Sales and Hudson Motor and differ only in an immaterial respect from the contracts between Hudson Motor and its twelve other distributors. The provisions of these agreements show that Hudson Motor retains the right to withdraw from Hudson Sales the franchise over any portion of its ascribed territory if Hudson Sales fails satisfactorily to represent the products of Hudson Motor; that Hudson Motor shall not be liable for damage to Hudson Sales because of Hudson Motor's failure to fill the orders accepted by it; that Hudson Sales must charge no more than factory-suggested prices and allow dealers no less than suggested discounts; Hudson Sales must maintain accounting systems approved by Hudson Motors, and furnish to it a monthly financial statement.

Process in this action was served upon one J. E. Demarais, Assistant Zone Manager, Minnesota Zone of the Hudson Sales Corporation. His uncontroverted affidavit shows that the United States Marshal left with him on behalf of the Hudson Motor Company a copy of the summons and complaint on the ground that there was no representative of Hudson Motor in the state. Demarais' salary is paid by Hudson Sales.

Defendant moves to (1) dismiss this action against Hudson Motor, or in lieu thereof to quash the return of summons on the ground of insufficiency of service of process as to it; and (2) to dismiss the action on the grounds of (a) lack of jurisdiction over Hudson Motor, and (b) failure of the complaint in the absence of an allegation of sufficient jurisdictional facts to state a claim upon which relief can be granted.

In disposing of defendant's motion, it seems desirable to discuss first defend-

ant's contention that service of process on Hudson Motor was insufficient. The decisive statutory provisions are found in 28 U.S.C.A. § 1694. That section provides,

"In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business."

Therefore, in order that service of process may be upheld in this case, it must be shown that service was made upon an agent of the defendant, and further, that through that agent's activities defendant may be said to be doing business in the state. Thus, the issues presented by this and that presented by the defense of lack of jurisdiction over the defendant are substantially the same and suggest the following query: Are the defendants independent corporations or are they so closely related as to justify a finding that defendant Hudson Motor is, through the activities of Hudson Sales, doing business in the State of Minnesota?

The leading case involving this issue is Cannon Mfg. Co. v. Cudahy Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. In that case, plaintiff brought action for breach of contract in the State of North Carolina against Cudahy Packing Company, a Maine corporation. Service of process was on Cudahy Packing Company of Alabama, a wholly owned subsidiary of the Maine corporation, which marketed the products of Cudahy of Maine in the State of North Carolina. The Alabama corporation bought these products from the Maine corporation and sold to dealers within the State of North Carolina. Although the defendant

"Through ownership of the entire capital stock and otherwise,

* * * dominate[d] the Alabama corporation, immediately and com-

pletely; and exert[ed] its control both commercially and financially in substantially the same way, * * * as it does over those selling branches or departments of its business not separately incorporated * * *",

the Court held that the corporations were separate and "not pure fiction." It was noted that the books of the corporations were kept separate, and that all transactions between them were recorded in their respective books in the same way as if the two were wholly independent corporations.

Plaintiff asserts a distinction between the present case and the Cudahy case, supra. He seeks to establish the theory that if, in an attempt to serve a foreign corporation on the basis of the acts of its subsidiaries within the state, plaintiff seeks to hold the corporation liable for the wrongs of its subsidiaries rather than on the basis of its own independent wrong, then there is greater reason for finding the parent to be doing business in the state. This distinction is given some weight by language in Industrial Research Corp. v. General Motors Corp., D.C.N.D.Ohio, 1928, 29 F.2d 623. That court observed, at page 626 of 29 F.2d.

"It should be noted that, in the opinion in the [Cudahy] case, a distinction which exists between that case and this at bar is noticed by the court * * *, namely, that in the case considered by the Supreme Court there was no attempt to hold the moving defendant liable for an act of [sic] omission of its subsidiary, and for that reason alone cases concerning substantive rights such as those cited in the opinion of the Supreme Court are not applicable. These cases are of some interest in the pending controversy * * *."

It does appear that a parent corporation may be liable for the patent infringement of its subsidiary if control over the subsidiary is so complete that the relationship of master and servant exists. Lektophone Corp. v. Philadelphia Stor-

age Battery Co., D.C.E.D.Pa., 1934, 8 F.Supp. 46. And in the instant case the complaint that the "defendants, and each of them, are committing acts of infringement * * * by making, using, or selling streamline bodies" might be construed to support a claim that defendant Motor Company is vicariously liable for the infringements by sale committed by the Hudson Sales Corporation.

However, the unsoundness of the interpretation of the Cudahy case offered by the General Motors case, supra, and the plaintiff herein is obvious from an examination of the Cudahy opinion. It was said by the Supreme Court, 267 U.S., at page 337, 45 S.Ct. at page 251:

"There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce against the latter a liability of the defendant. Hence, cases concerning substantive rights * * * have no application."

In so reasoning, the court distinguished cases where the corporate entity was disregarded in order to do substantial justice. And it established the proposition that the corporate entity will not be disregarded unless necessary to assess realistically responsibility for a legal wrong, and that cases concerning substantive rights are not applicable to matters of procedure. See Schenstrom v. Continental Machine, Inc., D.C.S.D.N.Y., 1947, 7 F.R.D. 434; La Varre v. International Paper Co., D.C.E.D.S.C., 1929, 37 F.2d 141. The language in the Cudahy case, therefore, is of no help to the plaintiff. On the other hand, it shows that most of the cases cited by plaintiff in his brief involving substantive rights are not in point in this controversy.

There remains undisposed of only the contentions of plaintiff that the facts of the present case are outside the Cudahy case because they show less of a separation of corporate identities. He relies primarily upon Industrial Research Corp. v. General Motors Corp., supra. In that case, the court did find that the General

Motors corporation was subject to process in Ohio by reason of the activities in that state of the General Motors Truck Co. It is true that the relationship between those companies was insulated by the intermediate presence of two other corporations, yet the case is distinguishable from the one at bar. First, there the corporate articles of the parent corporation showed that it was organized to *manufacture and deal in* automobiles, etc., and to generally conduct an automobile business in all its branches. Second, the parent corporation failed to produce, on motions to quash service, evidence of the separate identities of the corporations. Therefore, the court held that in the absence of proof of such facts, they would be presumed not to exist. Third, it was judicially noticed by the court that the General Motors corporation did nothing in itself to conduct its business—that if it did business at all it did so through these subsidiaries.

Numerous other cases show that the facts of the instant case do not constitute such a merger of corporate identities as to justify the finding that Hudson Motor is doing business in this state. For example, Schenstrom v. Continental Machines, Inc., D.C.S.D.N.Y., 1947, 7 F.R.D. 434, although involving a corporation as parent and a partnership as subsidiary, analogized the issue to the double corporation situation and stressed as important the fact that the subsidiary distributor of the corporation's products maintained separate books, bank accounts, employees, offices and sales agencies and the fact that orders were sent to the subsidiary. It reiterated as still controlling the rule of the Cudahy case, supra, that mere ownership and control are insufficient to bring the parent within the state for purposes of jurisdiction. The continued vitality of that decision is further indicated by its application in Favell-Utley Realty Co. v. Harbor Plywood Corp., D.C.Cal., 1950, 94 F.Supp. 96. There, although the parent had referred in an S.E.C. prospectus to the subsidiary as maintaining its San Fran-

cisco branch salesoffice, that nearly every director of the subsidiary had been or was a director of the parent, and that on occasion shipments of goods were made direct to the subsidiary's customers, it was held that no substantial identity between the corporations was shown.

Mas v. Orange-Crush Co., 4 Cir., 1938, 99 F.2d 675, involves facts substantially different from those at bar. There, the subsidiary corporation was found to be non-existent except in a set of books kept by the parent. The subsidiary had no headquarters or place of business in the state of the forum, no funds in its own control and no opportunity whatever for independent action in the management of its affairs. The case does indicate, however, that even where a parent is found to be doing business in the state where only its subsidiary is allegedly conducting business, the implied requirement of the Cudahy case—that to ignore the corporate entity for jurisdictional purposes, the existence of the subsidiary must be "pure fiction"—is consistently followed. The facts of the case at bar show that Hudson Sales has an independent headquarters in Minnesota for the transaction of the business of contracting with local dealers for the delivery of automobiles and parts. It has independent bank accounts, books of record, employees, income tax reports, and financial statements. Although it is bound by contract to comply with some requirements as to the operation of its business, these are not so unreasonable as to compel the conclusion that Hudson Sales cannot be an "independent" corporation or that its existence is "pure fiction" within the test adopted by the Supreme Court.

It follows, therefore, that service on Demarais, Assistant Zone Manager of Hudson Sales Corporation, was insufficient to constitute service on Hudson Motor Car Company. The motion to dismiss as to that defendant is therefore granted. It is so ordered. An exception is allowed.