ECHEVERRY v. KELLOGG SWITCH-BOARD & SUPPLY CO.

No. 241, Docket 21302.

United States Court of Appeals Second Circuit.

Argued May 11, 1949.

Decided June 29, 1949.

---

[7] Interst on the judgment is not in issue here.

Diamond & Elkind, New York City, for Plaintiff-Appellant, Leonard W. Diamond, New York City, of Counsel.

Tenney, Sherman, Rogers & Guthrie, Chicago, Ill., Choate, Mitchell & Ely, New York City, for Defendant-Appellee, S. Ashley Guthrie, Chicago, Ill., William H. Crawford, New York City, of Counsel.

Before CHASE, CLARK, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiff, Jesus Echeverry, a citizen of the Republic of Colombia (who was thus an alien), instituted, in the United States District Court for the Southern District of New York, a civil action against Kellogg Switchboard and Supply Company (hereinafter called Kellogg), a corporation organized under the laws of the State of Illinois. The District Court granted Kellogg's motion to dismiss on two grounds: (1) The venue was improperly laid in the Southern District of New York; (2) Service of process in this District on Willard L. Jones was not valid and binding on Kellogg. The ground of each of these holdings was that Kellogg was not doing business in the Southern District of New York in so far as the term "doing business" constituted a basis for either the propriety of the venue or the validity of the service of process. Plaintiff has duly appealed to us.

Since we agree with the District Court that Kellogg was not doing business in New York, as that term is used above, this makes it unnecessary for us to discuss any of the other questions in the case. We are, accordingly, required, by the same token, to affirm the judgment below.

There is practically no dispute here as to the facts, which were derived from the affidavit of James Kellogg, president of Kellogg, and the affidavit and deposition of Willard Jones, vice-president of the Telephone Sales and Service Corporation (hereinafter called Telephone), a New York corporation and a wholly owned subsidiary of Kellogg.

Jones was paid partly by Kellogg, partly by Telephone. Every other employee of Telephone was paid solely by Telephone. Neither Telephone nor Jones is in any sense the agent of Kellogg. Indeed, neither Jones nor Telephone was even empowered to solicit orders for Kellogg. Of the merchandise sold by Telephone, about 60% is manufactured by Kellogg and first sold outright to Telephone, which services equipment sold by Telephone to its customers; but Telephone does not service equipment sold by Kellogg directly to its customers in New York. Kellogg has never qualified to do business in New York, pays no occupational tax there and has never appointed an agent for service of process in New York.

Kellogg maintains no office, warehouse or inventory in New York. Kellogg's name, however, does appear in the directory of the building at 16 Hudson Street, New York City, in which is located the office of Telephone. The name of Kellogg is in the New York City Telephone directory under the number of Telephone. Just when and by whom these arrangements were made, does not appear. Calls over this telephone for Kellogg are switched to Jones, who directs the callers, who might be possible purchasers from Kellogg, to the latter's home office in Chicago. When, as is only occasionally the case, mail directed to Kellogg is delivered to Telephone's office, this is opened by Jones and is forwarded to Kellogg in Chicago.

The duties to be performed by Jones on behalf of, and for which he receives compensation from, Kellogg are rather limited and somewhat nebulous. According to the affidavit of Jones:

"His sole duty and authority as an employee of Kellogg Company is to periodically call upon certain designated customers of Kellogg Company located in the New York area and to discuss with them such problems as may arise from time to time in their use of equipment purchased from Kellogg Company. His efforts in this connection are designed to maintain customer good-will and satisfaction with the use of Kellogg Company products. His employment does not include the solicitation, nor does it authorize the acceptance, of orders from such customers for Kellogg Company."

In this same affidavit, Jones, as to the relations between Kellogg and Telephone, stated:

"Telephone Corporation has been engaged from the date of its organization to the present date in the sale of telephone and communications equipment to industrial users and the servicing of such installations. In its normal course of business it purchases telephone and communications equipment from various manufacturers thereof, including Kellogg Company, which it sells at retail. On May 15, 1944, nearly 3 years before acquisition of its stock by Kellogg Company, Telephone Corporation entered into a contract with Kellogg Company whereby it agreed to buy certain products from Kellogg Company for resale in a prescribed territory including portions of Delaware, New Jersey, Connecticut and New York. Said contract provides that it shall continue in force for a period of three (3) years and from month to month thereafter until cancelled by either of the parties. Said contract remains and is now in full force and effect. Telephone Corporation pursuant to said contract is allowed the same discounts as are allowed by Kellogg Company to other jobbers and dealers on similar purchases of its products. Telephone Corporation also buys, sells and deals in telephone products bought from other manufacturers who are in competition with Kellogg Company. * * *

"Telephone Corporation is operated wholly independently of Kellogg Company. Telephone Corporation has no power or authority to act for Kellogg Company, or to represent Kellogg Company, in any manner, or for any purpose, as agent or otherwise."

And the president of Kellogg, in his affidavit of like effect, stated:

"Willard L. Jones, is, and has been, since April 1, 1947, a part-time employee of Kellogg Company. He has not, and never had, authority to accept orders for Kellogg Company in New York. His only duty as such employee of Kellogg Company in New York is, and always has been, to call on certain customers to get information from them with respect to their present and prospective use of products made or sold by Kellogg Company, and to transmit that information to Kellogg Company in Chicago."

■ Incidentally, none of the transactions which are alleged to have given rise to the claims or causes in action herein involved (which were assigned to the plaintiff), arose or took place in the State of New York.

The published decisions on what constitutes "doing business" in a State by a foreign corporation are literally legion. Yet, in spite of this vast array of judicial authority, border-line cases still have to be

decided each on its own peculiar set of facts, which too often cannot be fitted into a stereotyped pattern. In this field, realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics. In United States v. Scophony Corporation, 333 U.S. 795, 810, 68 S.Ct. 855, 863, 92 L.Ed. 1091, Mr. Justice Rutledge spoke of "the practical, nontechnical, business standard."

■ It seems clear that the business of Telephone in New York is not the business of Kellogg, for the purposes of the question before us, merely because Telephone was the wholly owned subsidiary corporation of Kellogg. Mr. Justice Brandeis was quite emphatic on this problem in Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 336-337, 45 S. Ct. 250, 251, 69 L.Ed. 634, where he said:

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U. S. 171, 43 S.Ct. 311, 67 L.Ed. 594. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177-178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409-411, 23 S.Ct. 728, 47 L.Ed. 1113; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; and People's Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more inti-

mate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce as against the latter a liability of the defendant.

Hence, cases concerning substantive rights * * * (citing cases) have no application."

See, also, Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 89, 53 S.Ct. 529, 77 L.Ed. 1047; McLean v. Goodyear Tire & Rubber Co., 5 Cir., 85 F.2d 150, 151, certiorari denied 299 U.S. 600, 57 S. Ct. 193, 81 L.Ed. 442.

It can hardly be contended in the instant case that there was here any subterfuge, that Kellogg was endeavoring to hide behind Telephone as a sham or dummy corporation. Telephone had been in existence for some years, and had entered into contracts with Kellogg before the stock of Telephone was acquired by Kellogg.

It would seem, then, that plaintiff's contention here can be sustained only on the basis of the activities in New York on behalf of Kellogg, by Jones, upon whom service in New York was made. How very tenuous and how extremely circumscribed were these activities of Jones, has already been indicated in this opinion.

■ We proceed now to a brief discussion of some of the cases in this field. The broad general rule was admirably stated in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 86-87, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, by Mr. Justice Day:

"Upon the broader question, we agree with the District Court that the American Tobacco Company at the time of the attempted service was not doing business within the State of Louisiana. The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each

case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; St. Louis Southwestern Ry. Co. [of Texas] v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486, Ann. Cas.1915B, 77.

"The fact that the company owned stock in the local subsidiary companies did not bring it into the State in the sense of transacting its own business there. Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L. Ed. 841; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710. As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710." Circuit Judge Parker, in Cannon v. Time, Inc., 4 Cir., 115 F.2d 423, 425, discussed the Peoples Tobacco case and went on to say:

"Even if the News Company be considered the agent of defendants in accepting and collecting for subscriptions, it does not follow that the defendant should be held present and doing business within the state. Mere solicitation of business by an agent does not constitute such a doing of business as to subject a foreign corporation to the local jurisdiction; and the situation is not changed by the fact that the agent may collect some money in connection with the business solicited."

And, in connection with these cases, we note again that Jones was empowered neither to solicit orders nor to collect money for Kellogg in New York. Nor can we regard as of real consequence here the listing of Kellogg in the building directory and in the telephone directory of New York. See, on this precise point, Landaas v. Canister Co., D.C., 69 F.Supp. 835, 837.

We find, in the cases relied upon by plaintiff's counsel, no substantial variance with the views we have expressed. In United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, the first head-note reads:

"A British corporation with its principal place of business in London engaged in the Southern District of New York in various but continuing efforts to conserve and exploit its television inventions and patents. This was done through a series of complex contractual arrangements made with certain American corporations and involved the British company's constant intervention and supervision. The company was represented in the New York district by two of its directors, one of whom held a comprehensive power of attorney to protect its interests in the United States."

How different there is the picture when compared with the case before us. In Bach v. Friden Calculating Machine Co., 6 Cir., 167 F.2d 679, Circuit Judge Martin pointed out the elaborate and detailed contract which gave the foreign corporation large control over its operations in the State in which process was served; and there (which is not true in our case) the contract was held to be a manifest subterfuge. See, too, Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33, which case, moreover, turned on questions of local law not involved in our case; and Carroll Electric Co. v. Freed-Eisemann Radio Corporation, 60 App.D.C. 228, 50 F.2d 993. Again, in Moore Machinery Co. v. Stewart-Warner Corporation, D.C., 27 F.Supp. 526, 529, District Judge St. Sure characterized the contract as "a studied attempt to circumvent the laws of agency and state statutes relating to jurisdiction and the service of process"; and, also again, an elaborate

contract gave, see 27 F.Supp. at page 529, broad powers to, and imposed large responsibilities upon, the distributor.

We are not unmindful of the opinion in Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184. We think, however, the instant case can be distinguished from the Latimer case on the facts. Moreover, the decision in that case went off on the application of the doctrine of forum non conveniens to the facts, a doctrine we do not find feasible of application here.

The judgment of the District Court is affirmed.

Affirmed.