Harvey F. LUDWIG, Plaintiff,

v.

GENERAL BINDING CORPORATION,
Defendant.

No. 57–C–150.

United States District Court
E. D. Wisconsin.

Oct. 18, 1957.

John L. Newman, Milwaukee, Wis., for plaintiff.

Michael, Spohn, Best & Friedrich, Milwaukee, Wis., George A. Schutt and Kenneth K. Luce, Milwaukee, of counsel, for defendant.

GRUBB, District Judge.

This action for breach of contract was commenced on June 7, 1957 in the Circuit Court of Milwaukee County, Wisconsin, when plaintiff purported to serve a summons and copy of his complaint upon the defendant, General Binding Corporation. Upon defendant's petition, the cause was removed to this court. Defendant, by answer, challenged the jurisdiction of the court over the person of General Binding Corporation, and prayed that the court dismiss the action, or, in lieu thereof, quash the return of service. The parties consented to a hearing and determination of defendant's objection to the jurisdiction of the court prior to the trial of the principal case. The court so ordered and the objection was heard on the testimony, exhibits and arguments of counsel.

Plaintiff attempted to serve defendant by serving David Montguire, a vice president and general manager of Rex-O-Graph, Inc., a wholly-owned subsidiary of defendant, by also serving Charles Barnett, a salesman of GBC Sales & Service, Inc. (hereinafter referred to as "GBC"), a wholly-owned subsidiary of defendant, and by serving, at Chicago, Illinois, N. F. Proudly, defendant's comptroller. There was some question as to whether the return of service on Montguire accurately described the capacity in which he was served, and plaintiff moved to amend the return. Defendant has conceded that it is proper for the court to amend the return of service to show the correct status of the person served in conformity with the evidence established at the hearing. The court's determination of defendant's objection to jurisdiction renders the motion to amend service moot.

It is undisputed that defendant is a corporation, organized under the laws of the State of Illinois and was not licensed to do business in the State of Wisconsin on the dates of the alleged service. The Wisconsin statute on service upon foreign, unlicensed corporation provides (Section 262.09(4), Wis.Stats., 1955):

"Foreign corporations, generally. If the defendant is a foreign corporation * * * and (a) is doing business in Wisconsin at the time of service, or (b) the cause of action against it arose out of the doing of business in Wisconsin, service may be made * * * by delivering within or without the state a copy of the summons to any officer, director

or managing agent of the corporation."

Rule 4(d) (3, 7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., has substantially the same provisions.

Whether reliance be placed on the federal or the Wisconsin statute, the result will be the same, for both are broad enough to cover all situations allowed within the confines of due process. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, Behling v. Wisconsin Hydro Electric Co., 1956, 275 Wis. 569, 83 N.W.2d 162. Inquiry must accordingly be directed to whether defendant was "conducting activities" in Wisconsin (International Shoe Co. v. Washington, supra) or, equivalently, whether it was "doing business in Wisconsin" (Section 262.09(4), Wis.Stats., 1955).

The facts bearing upon the question whether defendant was doing business in Wisconsin are as follows:

■ Defendant, as distinguished from its subsidiaries, maintained no office in Wisconsin, owned no real or personal property in Wisconsin, and itself made no sales and conducted no business in Wisconsin. The contract with defendant upon which plaintiff seeks recovery in the principal action was executed in Illinois and required performance by the plaintiff in Illinois. It did not constitute doing business in Wisconsin. In short, unless the activities of, or relating to, one or both of its subsidiaries can be ascribed to defendant, there is no basis for determining that defendant was doing business in Wisconsin.

■ GBC, a wholly-owned subsidiary of defendant, conducted sales activities in Wisconsin completely separate, and was a distinct corporate organization from the defendant. It maintained its own books of account, corporate records, and bank account, held its own corporate meetings, filed its own tax returns, and had its own board of directors and officers. Although many of its officers and directors were also officers and directors of the defendant, there is no evidence to show that the individual corporate integrity of GBC was at any time disregarded.

On March 10, 1956, defendant purchased all the capital stock of Rex-O-Graph, Inc., a Wisconsin corporation, doing business in Wisconsin. At the time of this purchase, David Montguire was an employee of Rex-O-Graph. Thereafter, he was made vice president and general manager of Rex-O-Graph. He had no authority from defendant to act or do anything for or on behalf of defendant in Wisconsin. Occasionally, Montguire, an engineer, consulted directly with defendant on technical matters, but always at Chicago. Montguire's salary was paid to him directly by defendant rather than by Rex-O-Graph. All other personnel of Rex-O-Graph were paid by Rex-O-Graph. Rex-O-Graph maintained its own separate books of account, corporate records, and bank accounts, held its own corporate meetings, filed its own tax returns, had its own board of directors and officers, although in many cases they were also directors and officers of defendant, and in all respects maintained formal existence as a separate and distinct corporate entity. The lease to the real estate occupied by Rex-O-Graph was entered into by Rex-O-Graph. Some of defendant's stationery listed Rex-O-Graph as a Class II General Binding Corporation factory branch; defendant occasionally furnished certain advertising materials for Rex-O-Graph, as evidenced by plaintiff's exhibit number 5. There is evidence that one Souders was employed by the defendant to train salesmen in the selling of various products. There was testimony that he did this training in Chicago, although plaintiff testified that on one or more occasions Souders came into Wisconsin to help train Rex-O-Graph salesmen in selling Rex-O-Graph products.

There is no evidence that he made any sales himself or that he acted other than in a teaching or advisory capacity.

■ There are thus three possibilities under which it might be contended that defendant was doing business in Wisconsin. The first is that those activities conducted directly by defendant, such as furnishing advertising for Rex-O-Graph and sending a sales instructor to Rex-O-Graph constituted doing business in Wisconsin. The answer to this is that these activities, considered singly, or as a whole, are too minor and sporadic in their nature and quality to constitute doing business in Wisconsin and support service of Wisconsin process upon defendant. International Shoe Co. v. Washington, supra; Le Vecke v. Griese-dieck Western Brewery Co., 9 Cir., 1956, 233 F.2d 772.

In this connection the court has not overlooked the history of the litigation in Riverbank Laboratories v. Hardwood Products, Inc., 7 Cir., 1955, 220 F.2d 465, Id., 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866 and 1956, 350 U.S. 1012, 76 S.Ct. 656, 100 L.Ed. 872, and 7 Cir., 1956, 236 F.2d 255. The court is aware of the trend to require less and less showing to support a holding that a foreign corporation is doing business in a state. The defendant's activities in the Riverbank case in that respect were much greater than those here before the court. The activities here before the court are considerably less than those in any decision cited to or found by the court in which there was a holding that the activities constituted doing business within a state. The court is satisfied that the defendant was not doing business within Wisconsin to such an extent as to meet the Wisconsin standards.

The second possibility is that defendant so dominated and controlled one or both of its subsidiaries that they functioned only as agents of the defendant in Wisconsin. The third possibility is that because defendant owned all the stock of both subsidiaries and therefore had,

in final reality, control of them, defendant was *ipso facto* present and doing business in Wisconsin. These latter two possibilities will be discussed together, after making the initial remark that, for the purpose of decision, attention need be directed only at the relationship between defendant and Rex-O-Graph. GBC can be disregarded. The facts surrounding Rex-O-Graph's operation are far more favorable to plaintiff than those relative to GBC, and if defendant was not doing business in Wisconsin through Rex-O-Graph, it certainly was not through GBC.

■ It is a well-established legal principle that a foreign, non-resident corporation is not doing business in a state and is not subject to the jurisdiction of a state in which it conducts business through the instrumentality of a subsidiary corporation, where the existence of the subsidiary corporation as a distinct corporate organization is observed. Cannon Manufacturing Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Consolidated Textile Corp. v. Gregory, 1933, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Harris v. Deere & Company, D.C.E.D.N.C.1955, 128 F.Supp. 799, affirmed, 4 Cir., 1955, 223 F.2d 161; Bergholt v. Hudson Motor Car Co., D.C.D.Minn.1954, 124 F.Supp. 716; Fergus Motors v. Standard-Triumph Motor Co., D.C.S.D.N.Y.1955, 130 F.Supp. 780; see also annotation in 18 A.L.R.2d 187. The maintenance of separate books, separate corporate records, separate directors' meetings, etc. are of paramount importance. Leaving aside for the moment the question of Montguire's relationship with defendant and Rex-O-Graph, the facts can only lead to the conclusion that the separate corporate existence and identity of Rex-O-Graph was successfully maintained. Cases such as International Shoe Co. v. Washington, supra, which deal with the question of whether a foreign corporation is doing business in a state when it maintains an agent there who performs

activities of greater or less extent for the foreign corporation are not relevant in the parent-subsidiary situation because, as explained above, if the separate corporate existence and identity of the subsidiary is maintained, the parent, in contemplation of law, has no agent in the state and is carrying on no activities at all in the state.

■ The court finds that Rex-O-Graph maintained itself as a completely separate corporate entity; that it followed all requirements in that respect. Its only relationship to the defendant was that the defendant owned the stock. The defendant, as could any holder of the entire or even majority stock in a corporation, as stockholder, could name directors and officers but its control was confined to that relationship only. All employees of Rex-O-Graph were hired by Rex-O-Graph, and all, excepting Montguire, were paid by Rex-O-Graph.

■ It is true that under appropriate facts a foreign corporation may be held subject to service of process through, or even liable for, the acts of a local subsidiary or distributor if it imposes one of its agents upon the subsidiary in disregard of the subsidiary's corporate machinery or otherwise controls and directs the local organization in such manner as to destroy its separate existence. See Costan v. Manila Electric Co., 2 Cir., 1928, 24 F.2d 383; Bach v. Friden Calculating Machine Co., 6 Cir., 1948, 167 F.2d 679; Kahn v. Maico Company, 4 Cir., 1954, 216 F.2d 233. In this case Montguire, vice president and general manager of Rex-O-Graph, was paid by defendant. This is the sole fact which could suggest that the separate corporate existence and machinery of Rex-O-Graph was not perfectly maintained. It must be examined to determine its significance. The question to be answered is whether defendant's action of paying Montguire's salary constituted a denial of Rex-O-Graph's governance of its own affairs and the imposition of one of defendant's agents upon Rex-O-Graph.

The most that can be inferred from defendant's payment of Montguire's salary is that he was an employee of defendant and was working for Rex-O-Graph pursuant to defendant's orders to him. Montguire was placed in charge by Lane, president of Rex-O-Graph. Lane also happened to be president of General Binding but he was president of Rex-O-Graph. This is a far different thing from saying that defendant imposed Montguire upon Rex-O-Graph or ordered Rex-O-Graph to accept him. The facts show that Rex-O-Graph, by the normal exercise of its own corporate machinery, made Montguire its vice president and general manager. It conferred upon him whatever authority he exercised in that position. Defendant's order to Montguire, if, in fact, there ever was such an order, had the effect only of making him available to Rex-O-Graph. It did not and could not put him in charge of Rex-O-Graph. That was done only when Rex-O-Graph accepted him as its officer. Montguire transacted no business and carried on no activities in Wisconsin for General Binding. Whatever activities he did engage in were done under authority conferred upon him by Rex-O-Graph and were done immediately and directly for Rex-O-Graph. The principle of the United States Supreme Court case of Cannon Manufacturing Co. v. Cudahy Packing Co., supra, relating to parent and subsidiary corporations, is controlling and must not be made lifeless by subtle distinctions founded upon slight and unimportant factual differences which do not actually alter the basic situation. See Hudson Minneapolis, Inc. v. Hudson Motor Car Company, D.C.D. Minn.1954, 124 F.Supp. 720, 723, wherein the parent also directly paid the salaries of the subsidiary's top officers; also Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900.

The findings of fact and the court's conclusions of law appear in the foregoing opinion, pursuant to Rule 52(a),

so that no separate findings and conclusions need be prepared or filed.

Defendant is directed to prepare an order dismissing this action for the reasons set forth above, submitting it to plaintiff's counsel for approval as to form only.