**ALLIS–CHALMERS MANUFACTURING COMPANY, a Delaware corporation, Plaintiff,**

v.

**GULF & WESTERN INDUSTRIES, INC., a Delaware corporation, Defendant.**

Civ. A. No. 69–C–7.

United States District Court, E. D. Wisconsin.

Feb. 16, 1970.

Steven E. Keane, Milwaukee, Wis., for defendant, John A. Guzzetta and Bernhardt K. Wruble, New York City, of counsel.

Maxwell H. Herriott, Laurence C. Hammond, Jr., and W. Stuart Parsons, Milwaukee, Wis., for plaintiff.

## OPINION AND ORDER

REYNOLDS, District Judge.

Plaintiff, Allis-Chalmers Manufacturing Company ("Allis-Chalmers"), brings this action under § 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)) to recover "short-swing" profits allegedly made by the defendant, Gulf & Western Industries, Inc. ("Gulf & Western"), by a purchase and sale of Allis-Chalmers common stock. Gulf & Western has moved, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the action for improper venue or for an order transferring the action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Northern District of Illinois, Eastern Division.

The essential facts are not in dispute. Gulf & Western, by its prospectus dated July 1, 1968, made an offer to Allis-Chalmers shareholders to exchange cash and Gulf & Western warrants and debentures for Allis-Chalmers common stock. Gulf & Western designated Continental Illinois National Bank and Trust Company of Chicago as its exchange agent. Shares were to be tendered by delivering a letter of tender and stock certificates to the exchange agent prior to the expiration date,[1] or by receipt by the exchange agent of a guarantee of delivery of shares by a commercial bank or trust company or by a member firm of any registered national securities exchange or a member of the National Association of Securities Dealers, Inc.

The exchange offer was conditioned upon approval by the stockholders of Gulf & Western. A meeting for this purpose was scheduled for July 29, 1968.

Pursuant to the exchange offer, three million shares of Allis-Chalmers stock were acquired by Gulf & Western. Two hundred seventy-nine shareholders who had mailing addresses in the Eastern District of Wisconsin tendered an unknown number of shares, of which 4,558 (less than 0.02% of the shares acquired by Gulf & Western pursuant to the exchange offer) were exchanged in accordance with the terms of the offer. These 279 shareholders had been mailed copies of the prospectus of July 1, 1968, and a "Letter of Tender and Instructions" as were all other holders of Allis-Chalmers common stock. In addition, these 279 shareholders were mailed cash, warrants, and debentures by the exchange agent, as were other Allis-Chalmers shareholders whose tenders were accepted.

Gulf & Western registered the debentures and warrants offered with the Office of the Commissioner of Securities, State of Wisconsin, in accordance with Chapter 189, Wis.Stats. (1967). In connection with such registration Gulf & Western executed a "Uniform Consent to Service of Process" whereby the Securities Commissioner of the State of Wisconsin was appointed agent for service of process in any action arising out of a violation of the securities laws of the State of Wisconsin.

On October 31, 1969, Gulf & Western agreed to sell all of the shares of Allis-Chalmers common stock owned by it to White Consolidated Industries, Inc. The closing date of this sale was December 6, 1969. This sale was in no way connected with the Eastern District of Wisconsin.

Gulf & Western is a Delaware corporation with its principal office in New York City. It is not licensed to do business in Wisconsin, owns no property and maintains no office in Wisconsin. Gulf & Western owns all the issued and outstanding shares of Universal American Corporation ("Universal"), a Delaware corporation with its principal place of business in New York State. Universal is a separate corporation, all of whose shares of capital stock are owned by Gulf & Western. Universal does not own or operate a plant or otherwise conduct operations in Wisconsin. Universal has had no power to act for Gulf &

---

1. July 30, 1968, or on the date the exchange offer was extended by Gulf & Western.

Western or to represent Gulf & Western in any manner as agent or otherwise. Universal carries on its own business in its own name in marketing its own products. Universal maintains its own bank accounts, and no employees of Universal have been paid by Gulf & Western. Universal determines its own annual budget, and the initiative for all of Universal's expenditures are the prerogative of Universal. At all times relevant to this action, persons who had no connection with Gulf & Western prior to its acquisition of Universal stock comprised a majority of Universal's board of directors. There are no contracts between Gulf & Western and any of the officers of Universal who are responsible for its management whereby these officers are required to account to Gulf & Western, or whereby Gulf & Western reserves control over their activities concerning Universal.

Universal owns all of the issued and outstanding shares of capital stock of the Amron Corporation ("Amron"), a separate Delaware corporation which operates a plant in Waukesha, Waukesha County, Wisconsin, which is in the Eastern District of Wisconsin. Amron has not been authorized to act for Universal or to represent it in any manner as agent or otherwise. Amron has its own bank accounts, own customers, its own books of account, its own separate corporate records, and its own separate line of credit with banks. Amron pays its own employees, and promotion decisions are made by the management of Amron, except insofar as the officers of Amron are elected by its board of directors.

Gulf & Western also owns all of the issued and outstanding shares of capital stock of the E. W. Bliss Company ("Bliss"), a Delaware corporation with its principal place of business in Canton,

Ohio. Bliss is a separate corporation and is not an intracorporate division of Gulf & Western. Bliss operates a plant in Baraboo, Sauk County, Wisconsin. Sauk County is not in the Eastern District of Wisconsin.

On March 24, 1969, Gulf & Western commenced an action against Allis-Chalmers in the United States District Court for the Northern District of Illinois, Eastern Division, seeking a declaratory judgment as to the existence of any liability under § 16(b) with respect to the previously mentioned purchase and sale of Allis-Chalmers common stock. The exchange agent is located in that judicial district, and Allis-Chalmers maintains offices and does business there.

On March 25, 1969, pursuant to Rule 12(b) (3) of the Federal Rules of Civil Procedure, Gulf & Western moved this court to dismiss this action for improper venue, or to transfer the action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Northern District of Illinois, Eastern Division. This motion is now before the court.

Section 27 of the Securities Exchange Act of 1934 [2] provides that a suit to enforce liability for violation of § 16(b) may be brought in any federal district "wherein the defendant is found or is an inhabitant or transacts business" or "wherein any act or transaction constituting the violation occurred."

It is the position of Allis-Chalmers that venue is proper in this district because (1) Gulf & Western "transacts business" in the Eastern District of Wisconsin through its subsidiary Amron at Waukesha, Wisconsin, and (2) operative acts, including solicitation, tender, and consummation of the exchange offer, of the purchase of Allis-Chalmers

---

2. " * * * Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * * "

common stock constituting violations of § 16(b) occurred in the Eastern District of Wisconsin.

Defendant contends (1) that its stock ownership of Universal shares and Universal's ownership of Amron shares does not constitute doing business within Wisconsin, and (2) that a purchase or sale of securities must have been effected in the district for venue to lie, and no such purchase or sale was effected in the Eastern District of Wisconsin.

## LOCUS VENUE

■ For purposes of determining venue, a foreign corporation does not do business in a district where a wholly-owned subsidiary corporation, that is, a distinct corporate organization, conducts its affairs. As long as the distinction between the parent and the subsidiary is real, the subsidiary's activities will not subject the parent to jurisdiction. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1933); Harris v. Deere & Company, 128 F.Supp. 799 (E. D.N.C.1955), aff'd 223 F.2d 161 (4th Cir.1955); Bergholt v. Hudson Motor Car Co., 124 F.Supp. 716 (D.Minn. 1954); Fergus Motors v. Standard-Triumph Motor Co., 130 F.Supp. 780 (S.D.N.Y.1955); Ludwig v. General Binding Corp., 21 F.R.D. 178 (E.D.Wis. 1957); Blount v. Peerless Chemicals (P.R.) Inc., 316 F.2d 695 (2d Cir.1963); Boryk v. Aerolineas Argentinas, 228 F. Supp. 528 (S.D.N.Y.1964).

The distinction between Gulf & Western and Universal, and the distinction between Universal and Amron are both very real. The parent corporation in each situation retains control over the subsidiary only in the areas of approving major capital expenditures and controlling general policy matters.

"* * * The principle of the United States Supreme Court case of Cannon Manufacturing Co. v. Cudahy Packing Co., supra, relating to parent and subsidiary corporations, is con-

trolling and must not be made lifeless by subtle distinctions founded upon slight and unimportant factual differences which do not actually alter the basic situation. See Hudson Minneapolis, Inc. v. Hudson Motor Car Company, D.C.D.Minn.1954, 124 F.Supp. 720, 723, wherein the parent also directly paid the salaries of the subsidiary's top officers; also Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900." Ludwig v. General Binding Corporation, 21 F.R.D. 178, 182 (E.D.Wis.1957).

In Cannon, the Supreme Court decided that the parent and subsidiary had separate identities despite the fact that—

"* * * Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. * * *" 267 U.S. at 335, 45 S.Ct. at 251.

I find that the amount of control exercised by Gulf & Western over Universal, and the amount of control exercised by Universal over Amron is significantly less than that found in Cannon.

Allis-Chalmers cites United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), where the court construed the venue provisions of § 12 of the Clayton Act and held that a contract between parent and subsidiary coupled with stock control by the parent amounted to exercise of supervision over and intervention in the subsidiary's affairs sufficient to negate the separate corporate identities of the two corporations. Allis-Chalmers argues that Gulf & Western maintains the same type of control over Universal and Amron, that the corporate distinction should be negated, and that venue is proper in this district. However, in

Flank Oil Co. v. Continental Oil Co., 277 F.Supp. 357 (D.Colo.1967), the court noted that *Scophony* is an antitrust case where the more broad venue test of § 12 of the Clayton Act applies. The case at bar is not an antitrust case, and § 27 of the Securities Exchange Act of 1934 is the venue provision under consideration. Allis-Chalmers cites no authority indicating that the *Cannon* test does not apply in such a case, and this court is therefore bound by that decision and its progeny.

■ For the above reasons, I conclude that Gulf & Western is not found or transacting business in this district. Therefore, locus venue in this district is not proper.

### TRANSACTIONAL VENUE

Under § 27, venue is proper where "any act or transaction constituting the violation occurred." Plaintiff offers several arguments in support of its contention that venue is proper in this district. First, it is argued that since use of the mails and interstate communication was of material importance to the consummation of the exchange, the purchase of the stock was effected in every district where use was made of these interstate facilities. Plaintiff relies primarily on Hooper v. Mountain States Securities Corporation, 282 F.2d 195, at 205 (5th Cir.1960), wherein the court considered § 27 and said:

"* * * The legislative pattern envisages the likelihood that actions would take place in many places requiring the frequent use of instrumentalities of the mail or of communication. The Act meant to vest jurisdiction in every district where any use of such instrumentalities of the mail or interstate commerce was of material importance to the consummation of the scheme." Cited with approval in Peyser v. Meehan Fund, Inc., 264 F. Supp. 1, 2–3 (S.D.N.Y.1966).

Second, plaintiff argues that venue is proper in this district because part of the acts or transactions constituting the

purchase of the stock occurred here. Specifically, Allis-Chalmers contends that the solicitation, tender, and consummation of the exchange offer are operative parts of the purchase of the stock, are therefore acts constituting the violation, and that since some of them occurred in this district venue here is proper. Reliance is placed on *Peyser* and Rothenberg v. Silberman, 278 F. Supp. 116 (S.D.N.Y.1968). The *Peyser* court said that in a case involving §§ 16(b) and 27, "as long as some part of the short-swing transaction occurs within this district, venue is proper." 264 F.Supp. at 3. The *Rothenberg* court commented:

"The terms 'purchase' and 'sale', as those terms are used in § 16(b), embrace such operative acts as the making and transmittal of an offer or order to purchase or sell the securities, the acceptance of the offer, the confirmation, the record transfer of the security, the delivery of certificates, payment, and the execution by the parties of the purchase and sale instruments. If any part of any of these operative acts takes place within the forum district, a basis exists for venue under § 27. It is unnecessary to show that all of a series of purchases and sales took place in the district, * * * or that both the purchase and the sale occurred there, * * *. It is sufficient to show that some act constituting a part of one purchase, or of one sale, took place within the district, * * * even though the order to purchase or sell might emanate from elsewhere. * * *" 278 F.Supp. at 119.

Third, the plaintiff argues that venue in a § 16(b) case is not limited to the district or districts where the short-swing sale or purchase was consummated. Plaintiff points to language in the *Hooper* decision:

"It is apparent that the language in § 27, * * * describing the venue district as 'the district wherein any act or transaction constituting the violation occurred' cannot mean the dis-

trict in which all acts took place, or in which the transaction as a whole was consummated. * * *" 282 F.2d at 205.

Plaintiff also notes that the court in *Peyser* said:

"* * * The fact that the word 'any' was used in Section 27 is evidence of Congressional intent to expand the possible jurisdictions where corporate insiders who make unfair use of inside information may be amenable to suit." 264 F.Supp. at 2.

Finally plaintiff argues that the registering of warrants and debentures with the Commissioner of Securities of the State of Wisconsin was another operative act, without which the exchange could not have been effected, and is sufficient to support venue. Puma v. Marriott, 294 F.Supp. 1116, 1121 (D.Del. 1969), is cited where the court said:

"* * * However, the additional act of filing the merger agreement in Delaware, without which the merger could not have been effective, * * * when considered along with the proxy solicitation, is enough to support jurisdiction in this Court. * * *"

Despite these arguments by plaintiff and the language of the cases cited, it is my opinion that venue in this district is not proper.

■ A violation of § 16(b) consists of "* * * obtaining * * * profits by the wrongful purchase and sale, or sale and purchase, of shares * * *." Gratz v. Claughton, 187 F.2d 46, 49 (2d Cir.1951). "Until a contract is a firm commitment, i. e., until both parties are bound, there is no 'purchase' or 'sale' under [§ 16(b) of] the Act. Blau v. Ogsbury, 2 Cir., 210 F.2d 426. * * *" Stella v. Graham-Paige Motors Corporation, 132 F.Supp. 100, 104 (S.D.N.Y.1955), aff'd in relevant part, 232 F.2d 299, 301 (2d Cir.1956).

The cases relied on by plaintiff do not hold that venue is proper in a district other than one where the actual purchase or sale took place. In *Peyser*, the

court held that venue was proper in the Southern District of New York when a purchase of stock was made through the New York Stock Exchange because "the purchase of the * * * stock * * * was as much a part of the violation as was the sale * * *." 264 F.Supp. at 3. It was only in this context that the court indicated that "as long as some part of the short-swing transaction occurs within this district, venue is proper." Id. In *Rothenberg*, the court held venue improper in New York when both the purchase and sale of the stock had been made in California, despite the fact that part of the stock was later sold in New York as had been planned by the parties to the purchase and sale. The sweeping language in *Rothenberg* relied upon by the plaintiff is clearly dictum, and plaintiff has not cited nor have I been able to find any case that applies the statement of law therein and holds that it is correct. Likewise, plaintiff's reliance on *Hooper* is misplaced because that case involved § 10(b) of the Securities Exchange Act where the violation for venue purposes is where defendant uses "* * * any means or instrumentality of interstate commerce * * * (b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device * * *." 15 U.S.C. § 78j.

Decisions, such as *Hooper*, sustaining venue in a fraud case on the basis of use of an interstate instrumentality are of little value as analogies for determining venue in a § 16(b) case because the concept of fraud under the Securities Act is a broad one. Securities and Exchange Commission v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). See also *Rothenberg* at 121. In a fraud case communications that may be an important part of the fraudulent scheme are parts of the violation of fraud. Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del. 1962); Clapp v. Stearns & Co., 229 F. Supp. 305 (S.D.N.Y.1964). On the other hand, in § 16(b) cases the purchase

and sale required to violate the Act are more simply and easily definable conduct. In Gluck v. Vance, Sanders & Co., Inc., C.C.H.Fed.Sec.L.Rep. ¶ 92,433 at p. 98,054 (S.D.N.Y. June 30, 1969), the court said that in a § 10(b) case, marginal acts in furtherance of an illegal scheme could provide a basis for venue because it was a case where the

"* * * violations alleged are not a single easily identified occurrence, such as a purchase and sale in violation of section 16(b) * * *."

This distinction between the venue standards in §§ 10(b) and 16(b) situations leads to the conclusion that venue is proper in a § 16(b) case only where either the purchase or sale occurred.

It is important to note that plaintiff has brought no cases to the attention of the court where it was held that venue is proper in a § 16(b) case other than where either the purchase or sale occurred. *Peyser, Rothenberg,* and *Gratz* all held venue proper in the district where either the sale or purchase of the stock took place. Nor have I been able to find a case which held venue proper in a § 16(b) case in a district where either the purchase or sale did not occur.

██ The exchange offer in the case at bar was not final until the approval by the shareholders of Gulf & Western. The purchase of stock was made at that time when both parties became irrevocably bound to the transaction. The exchange of stock was completed at the situs of the exchange agent by the deposit by Allis-Chalmers shareholders of their stock with the exchange agent and by the approval of the exchange offer by Gulf & Western shareholders. The purchase was made at the situs of the exchange agent, in Chicago. Therefore, venue is proper in that district and not in the Eastern District of Wisconsin. The solicitation, tender, and consummation of the exchange offer in this district and the registration of Gulf & Western warrants and debentures were not the purchase of the stock and therefore are not sufficient to support venue.

## TRANSFER OF THE ACTION

Section 1406(a), 28 U.S.C., provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Since I believe that venue is proper at the situs of the exchange agent, and the defendant has commenced an action for declaratory judgment against the plaintiff, concerning the same issues of fact and law in this case, in the United States District Court for the Northern District of Illinois, Eastern Division, which includes the situs of the exchange agent, it is in the interest of justice to transfer the case there.

It is therefore ordered that defendant's motion to dismiss must be and it hereby is denied.

It is further ordered that defendant's motion to transfer this action to the United States District Court for the Northern District of Illinois, Eastern Division is hereby granted. Defendant shall submit an appropriate order.